[No. 11670-3-I. Division One. February 21, 1984.]

DENISE CLAIRE WARDEN, *Respondent,* v. CHARLES WARDEN, *Appellant.*

*Leen & Moore* and *David A. Leen,* for appellant.

*Patrick A. Geraghty, Jr.,* for respondent.

RINGOLD, J.—This appeal concerns the disposition of property acquired by parties living together but unmarried.

Denise Boursier met Charles Warden in Canada in 1961. Although Denise had married Clover Boursier in 1959, he had abandoned her shortly after the marriage and plays no part in this litigation. In 1963, at Charles' request, Denise went to California to live with him. From 1963 to 1967 the couple lived in California, holding themselves out as husband and wife. Denise used Warden as her last name and signed joint income tax returns as Charles' wife. She worked sporadically during this period. In 1967, when Denise was pregnant, Charles was transferred to New York, and she returned to Canada where their child, Nathalie, was born in June of 1967. Nathalie is legally blind, retarded and subject to seizures.

After Nathalie's birth Charles and Denise moved first to Arizona and then, in 1969, to Bellevue, Washington. Their second child, Marie, was also born in 1969. In 1969 they bought a house in Kirkland. Title to the house was conveyed to Charles Warden and Denise C. Warden, his wife. The notes and mortgage to finance the purchase were signed by both and income tax deductions for interest paid were claimed on joint returns.

In 1972, Charles moved to California to secure employment. While there he married his present wife. There is

evidence that Denise did not learn of this until 1977 and believed that Charles would eventually return. In any event, he did not, and in 1978 Denise brought suit to establish child support and ownership of the property. During the period between 1972 and 1977 Charles continued to make house payments on the Kirkland property and to contribute to child support. Denise and the children have occupied the house since its purchase and she has maintained it in Charles' absence. Denise is relatively unskilled and supports herself by caring for foster children in her home. Nathalie attends the state school at Vancouver.

The trial court established support and insurance requirements for Nathalie, required Charles to continue the house payments in lieu of support for Marie, awarded the home one–half each to Charles and Denise as tenants in common, and allowed Denise to reside in the house until Marie reaches 19, at which time the house is to be sold and the net proceeds divided equally between Charles and Denise. Charles appeals only that portion of the judgment decreeing the Kirkland home be held by Denise and Charles as tenants in common.

In deciding each case on its merits, our courts have failed to synthesize any clear approach to the division of property acquired by couples who choose to live together but do not marry. In *Creasman v. Boyle,* 31 Wn.2d 345, 196 P.2d 835 (1948), the court drew on prior cases and held that property acquired by unmarried parties was presumed to belong to the one in whose name the property stood. *Creasman* has since been much criticized and all but overruled. *See Latham v. Hennessey,* 87 Wn.2d 550, 554 P.2d 1057 (1976) and *West v. Knowles,* 50 Wn.2d 311, 311 P.2d 689 (1957). After *Creasman,* the courts employed a resulting trust theory in *Walberg v. Mattson,* 38 Wn.2d 808, 232 P.2d 827 (1951), considered a constructive trust theory in *Humphries v. Riveland,* 67 Wn.2d 376, 407 P.2d 967 (1965), and found a constructive trust in *Omer v. Omer,* 11 Wn. App. 386, 523 P.2d 957 (1974). Theories of implied partnership,

joint venture and express or implied contract to make a will were considered in *In re Estate of Thornton,* 81 Wn.2d 72, 499 P.2d 864 (1972).

Property has been divided in proportion to the amount contributed by each party where such amounts could be traced, *West v. Knowles, supra*; left in the name of the party holding title where contributions were concededly made but were not intended to transfer ownership, *Latham v. Hennessey, supra*; awarded one–half each to parties where both made contributions but neither could establish a greater claim, *Shull v. Shepherd,* 63 Wn.2d 503, 387 P.2d 767 (1963); and left as arranged by the parties where the relationship was not permanent or long term. *Hinkle v. McColm,* 89 Wn.2d 769, 575 P.2d 711 (1978).

Where then does the present case fit? Denise thought the house belonged to both. Charles says he always intended to provide a home for his children but no ownership for Denise. Denise's monetary contributions were minimal as she did not earn enough to establish a great cash contribution. Charles earned a reasonable salary and admittedly provided most of the funds. Title stands in the name of both and was treated as community property by jointly filing income tax returns and deducting interest payments.

If we resolve this problem in terms of dollars only, we disregard the contributions made by Denise's homemaking and child rearing. Except for the absence of a legally formalized marriage we see no distinctions in the contributions made, and the relationship maintained by Denise and Charles from 1963 to 1977, then presents to us the same situation had the couple been married. If we merely affirm on the basis of the state of title, we reach a just result without squarely facing the issue. Charles' counsel conceded at oral argument that had the relationship between Denise and Charles been solemnized by a formal marriage, he would not be arguing that the property division is unfair.

In *Omer v. Omer, supra,* this court recognized the problem, stating:

> A theory which would appear to involve the least fictional analysis has so far not been adopted in this state. That theory would recognize that certain meretricious relationships of long and durable standing may give rise to community property rights similar to those which prevail between married persons. *See In re Estate of Thornton, supra,* where the Supreme Court expresses some reluctance to continue resistance to this theory, but still declines to overrule or modify *Creasman v. Boyle, supra.*

*Omer,* at 391.

In *Latham v. Hennessey, supra,* the Supreme Court cited *Omer v. Omer* with approval and suggested, in dictum, the following approach:

> A court could ascertain whether there exists a long–term, stable, nonmarital family relationship. Such relevant factors include continuous cohabitation, duration of the relationship, purpose of the relationship, and the pooling of resources and services for joint projects. If a relationship exists, it is reasonable to assume that each member in some way contributed to the acquisition of the property. A court could then examine the relationship and the property accumulations and make a just and equitable disposition of the property. Also, if warranted by the facts of a particular case, the court could apply the community property laws by analogy to determine the rights of the parties. *See In re Estate of Thornton, supra,* at 80–81. A joint and equitable disposition of property entails considering "the respective merits of the parties, through whom the property was acquired, monetary and labor contributions, whether or not children were born of the relationship and who is to care for them, and the general condition in which the termination of the relationship will leave each of the parties." 48 Wash. L. Rev. 635, 644, n.44 (1973).

*Latham,* at 554.

Prior to the enactment of the Uniform Marriage and Divorce Act in April 1973, division of property in a divorce

was governed by well developed judicial principles. The application of statutory factors had been prescribed for less than 1 year when *Omer* was decided. RCW 26.09.080 provides:

In a proceeding for dissolution of the marriage, legal separation, declaration of invalidity, or in a proceeding for disposition of property following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall, without regard to marital misconduct, make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors including, but not limited to:
(1) The nature and extent of the community property;
(2) The nature and extent of the separate property;
(3) The duration of the marriage; and
(4) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse having custody of any children.

■ These statutory guidelines apply even to property divisions pursuant to a declaration of invalidity, where, as here, there was not a valid marriage. We believe the time has come for the provisions of RCW 26.09.080 to govern the disposition of the property acquired by a man and a woman who have lived together and established a relationship which is tantamount to a marital family except for a legal marriage.

The trial judge here properly treated Denise and Charles as a marital family and correctly considered the length and purpose of their relationship, the two children, the contributions of the parties, and the future prospects of each. He correctly assumed that both Denise and Charles contributed to the acquisition of the property and divided it in a manner which was "just and equitable after considering all relevant factors". RCW 26.09.080.

Accordingly, we affirm.

ANDERSEN and SCHOLFIELD, JJ., concur.

Review denied by Supreme Court May 11, 1984.