[No. 7005–7–II.   Division Two.   August 8, 1985.]

*In the Matter of the Marriage of* JOYCE E. HILT,
*Respondent, and* DANIEL M. HILT,
*Appellant.*

*David V. Johnson,* for appellant.

*S. Brooke Taylor,* for respondent.

PETRICH, J.—Daniel M. Hilt appeals the trial court's division of property in a dissolution action. He challenges (1) the trial court's characterization and division of 10 acres of real property acquired in his name alone 5 months after the parties began cohabiting, but 3½ years before they were married; and (2) the trial court's characterization and valuation of his unliquidated personal injury claim that arose during the marriage. We uphold the trial court's findings and conclusions with respect to the 10 acres, but because of a change in the law with respect to the characterization of one spouse's claim for personal injuries, and because we find insufficient evidence to support the court's valuation of the unliquidated personal injury claim, we reverse and remand.

Dan and Joyce Hilt were married on June 1, 1978, however they had been living together since June 1974. Five months after the parties began cohabiting, Dan purchased 10 acres of undeveloped land. The 10 acres were purchased for $15,000, with a $3,000 down payment being made from Dan's separate savings account. Dan was the only signatory as purchaser on the real estate contract and title was taken in his name alone. However, between December 1974 and June 1978, 10 monthly payments on the 10 acres, as well as some property taxes, were paid from Joyce's separate checking account, although Dan sometimes contributed to

that account.

During the marriage and 5 months before the parties permanently separated, Dan was seriously injured in an automobile accident in which a passenger in his car was killed. At the time of the dissolution trial, Dan was pursuing a personal injury action. The lawyer handling the personal injury claim testified that he expected a moderate–to–medium recovery, with an estimated minimum recovery of $25,000 for the unliquidated claim. Although the liability of the other driver, who had adequate liability insurance, appeared reasonably certain, there was an issue as to Dan's contributory negligence and the possibility of a wrongful death action against him by the estate of his passenger who was killed in the accident. As a result of the accident, Dan missed 13 months of work and developed a serious drinking problem that contributed to the parties' permanent separation.

During their premarital cohabitation, both parties shared in the management of the household affairs. As the relationship continued, Joyce assumed the primary responsibility for paying the parties' debts and obligations. These payments were made either from Dan's separate checking account or Joyce's separate checking account. They had no joint account. However, because Dan sometimes contributed to Joyce's separate checking account, it appears the parties did not intend to keep either assets or income separate and apart, with the exception of one savings account that Joyce maintained in her name and that of her daughter by a previous marriage. Six months before they were married, the parties purchased a house (K Street house) as tenants in common.

Although the exact nature of the parties' premarriage relationship was the subject of conflicting testimony by the parties, the court found that from the outset, the couple's 4–year meretricious relationship was a "long–term, stable" relationship. The court also found that most of the property acquired by both parties during the relationship could not be traced to either party's separate funds, and the

amount contributed by each could not be ascertained. The court thus held that the presumption of *Creasman v. Boyle,* 31 Wn.2d 345, 196 P.2d 835 (1948)[1] had been rebutted, and characterized the 10 acres as either community property or property held by the parties as joint tenants. The court also characterized Dan's unliquidated personal injury claim as community property and assigned to it a gross value of $100,000 (net $65,000, after subtracting attorney's fees and costs). The court then divided equally that property determined to be community or jointly owned. In so doing, the court awarded Dan the personal injury claim and the 10 acres. The court awarded Joyce the K Street house and an equalizing judgment of $28,958.50 secured by a lien against the 10 acres. In addition, each party was awarded property determined by the court to be his or her own separate property. The court awarded Dan separate property valued at $35,800, together with whatever value could be attributed to his life insurance policies, pension, boat, trailer, motor, 1976 judgment, and interest, if any, in another 8 acres of real property. Included in his separate property valued at $35,800 was a rental house with an equity valued at $31,300. Because the rental house was acquired by Dan 2 years before the parties began living together, the court determined this to be Dan's separate property—despite the fact that the parties had lived together for 8 of the 10 years during which this property was owned, and despite testimony by Joyce that she had managed the rental house exclusively and made all of its related payments from either

---

[1] In *Creasman v. Boyle,* 31 Wn.2d at 351, the Supreme Court declared:
[P]roperty acquired by a man and a woman not married to each other, but living together as husband and wife, is not community property, and, *in the absence of some trust relation,* belongs to the one in whose name the legal title to the property stands.
The Supreme Court further stated what has been identified as the *Creasman* presumption:
[W]e think that, under these circumstances and in the absence of any evidence to the contrary, it should be presumed *as a matter of law* that the parties intended to dispose of the property exactly as they did dispose of it.
*Creasman v. Boyle,* 31 Wn.2d at 356.

her separate funds or the parties' commingled funds. The court determined Joyce's separate property to have a net value of $1,774, together with whatever value could be attributed to her personal belongings and those of her daughter.

On appeal, Dan assigns error to the court's finding that the couple was engaged in a "long–term, stable meretricious relationship" at the time the 10 acres was acquired. He contends that because property is characterized as community or separate at the time of its acquisition, the requisite stability and long–term duration of the relationship must be established at the time the property is acquired. He argues there is nothing in the record to support the court's finding that the couple's relationship was long–term and stable at the time when he purchased the 10 acres and that the trial court only relied upon the fact that the parties eventually married. Dan also assigns error to the court's finding that difficulty in tracing the source of payments on the 10 acres rendered the amount contributed by either party unascertainable. He argues that the evidence presented clearly established the source of contributions for all the payments on the 10 acres. Thus, Dan contends the court erred by concluding that the *Creasman* presumption had been rebutted and awarding Joyce an interest in the 10 acres. We disagree that there is no evidence to support the court's findings and conclusions with respect to the 10 acres.

Appellate review is limited to determining whether a trial court's findings are supported by substantial evidence and, if so, whether the findings in turn support the court's conclusions of law. *Goodman v. Darden, Doman & Stafford Assocs.*, 100 Wn.2d 476, 670 P.2d 648 (1983). Here, there is the following evidence in the record which supports a finding that from the outset of their relationship, the parties intended to form a permanent relationship. Dan proposed marriage 3 months after the couple began living together and told Joyce that everything would be jointly owned. Further, Joyce managed both her bank accounts and Dan's

bank accounts. Dan contributed funds to Joyce's bank accounts, and a portion of Joyce's previous dissolution settlement was deposited into Dan's account and may have been used in part for payments on the 10 acres. As previously noted, the parties made little effort to keep either assets or income separate and apart. After the 10 acres were purchased, which Joyce and Dan viewed together before buying, the property was twice listed for sale with both parties signing the listing agreement. Moreover, some payments on the contract for the 10 acres, and property taxes for this parcel, were paid from Joyce's separate account. This evidence, taken together, supports the court's finding that the parties intended from the outset to form a long-term, stable relationship, and that the amount contributed by either party to payments on the 10 acres could not be ascertained. Accordingly, we uphold the court's conclusion that the *Creasman* presumption had been rebutted, and its award to Joyce of an interest in the 10 acres.[2]

Dan contends next that even if Joyce was entitled to an interest in the 10 acres, the court erred by awarding her a 50 percent interest in the property. We disagree. This contention is based upon the assumption that the court found the 10 acres to be Dan's separate property and only awarded Joyce a community interest in that separate property. Such is not the case. The court concluded the 10 acres was a community asset or jointly owned and not Dan's separate property. Pursuant to RCW 26.09.080, the trial court has broad discretion in disposing of the parties' property, both separate and community, and the court's disposition will not be disturbed on appeal in the absence of a manifest abuse of discretion. *In re Marriage of Miracle,* 101 Wn.2d 137, 675 P.2d 1229 (1984); *Baker v. Baker,* 80 Wn.2d 736, 498 P.2d 315 (1972). In light of the court's overall disposi-

---

[2]Because we find substantial evidence to support the court's findings and conclusions that the *Creasman* presumption was rebutted, we need not address the issue whether *In re Marriage of Lindsey,* 101 Wn.2d 299, 678 P.2d 328 (1984), which was decided during the pendency of this appeal and which overruled *Creasman,* is to be applied retroactively.

tion of the parties' separate and community assets, we cannot say as a matter of law that the court abused its discretion by awarding Joyce a 50 percent interest in the 10 acres.

We next address the issue whether the court erred by characterizing as community property Dan's entire claim for personal injuries resulting from the auto accident, which occurred while the parties were still married and living together. Dan contends that elements of damage incurred and received after permanent separation and dissolution of the parties' marriage should be the separate property of the injured spouse. We agree.

■■ At the time of trial, the rule in Washington was that recovery for injuries to a married person by a third party tortfeasor is community property. *Hawkins v. Front St. Cable Ry.*, 3 Wash. 592, 28 P. 1021 (1892). However, in *In re Marriage of Brown*, 100 Wn.2d 729, 675 P.2d 1207 (1984), decided after this appeal was filed, the Washington Supreme Court overruled *Hawkins*, and the cases relying thereon. Under *Brown*, the pain and suffering portion of a personal injury award recovered by a spouse from a third person is the separate property of the injured spouse. Those portions of the award that reimburse for injury–related expenses and compensate for lost wages and earning capacity are separate or community according to the character of the fund being reimbursed and the income–producing capacity being made whole. *Brown*, 100 Wn.2d at 738. Because *Brown* adopted the position urged upon us by the appellant, the issue becomes whether *Brown* is to be applied retroactively.

The retroactive application of an appellate decision involving a change in the common law requires consideration of a justifiable reliance on the earlier law, the nature and purpose of the overruling decision, res judicata, vested rights, and the effect of retroactive application on the administration of justice. *Milbradt v. Margaris*, 103 Wn.2d 337, 339–40, 693 P.2d 78 (1985), citing *Lau v. Nelson*, 92 Wn.2d 823, 826–27, 601 P.2d 527 (1979). After considering the above factors, the *Milbradt* court held that the holding

of *deElche v. Jacobsen,* 95 Wn.2d 237, 622 P.2d 835 (1980), which permits a judgment for a separate tort to be satisfied out of the tortfeasor's half of the community property, applies retroactively. In so doing, the court stated that the nature and purpose of an overruling decision supports retroactive application if it remedies previous inequitable treatment or protects the interests of innocent persons. *Milbradt,* 103 Wn.2d at 341–42. Further, reliance on earlier law in planning trial strategy is generally not a ground for not applying an overruling decision retroactively, particularly where retroactive application will not require relitigation of the issue. *Milbradt,* 103 Wn.2d at 340–41. However, a moderate increase in judicial activity is not a reason to avoid retroactive application of an overruling decision. *Milbradt,* 103 Wn.2d at 342–43. Finally, we note that retroactive application of the overruling decision is the general rule. *Lau v. Nelson,* 92 Wn.2d at 826.

Upon consideration of the factors set forth in *Milbradt,* we conclude that *Brown* should be given retroactive application. Clearly, the nature and purpose of the new *Brown* rule is to erase the inequity of characterizing one spouse's personal injury claim completely as community property. Like the *Milbradt* court's retroactive application of *deElche,* retroactive application of *Brown* would "bring Washington community property law more into line with the historical purposes of community property" and prevent a "legal immunity based upon an archaic community property concept." *Milbradt,* 103 Wn.2d at 341, 342. Moreover, *Brown* "did not create a new 'liability', the nonexistence of which was relied upon" by either party. *Milbradt,* 103 Wn.2d at 340.

Although applying *Brown* retroactively requires a remand for the trial court to recharacterize a portion of the personal injury claim as Dan's separate property and then redivide the parties' property, such a remand does not run counter to any justifiable reliance interest. In this regard, "[u]sually the reliance interest protected by limiting the retroactive effect of an overruling decision is a person's

reliance on the old rule in the conduct of daily affairs, and *not in subsequent litigation"*. (Italics ours.) *Milbradt,* 103 Wn.2d at 341, citing *Legal Method—Deciding the Retroactive Effect of Overruling Decisions—Lau v. Nelson, 92 Wn.2d 823, 601 P.2d 527 (1979),* 55 Wash. L. Rev. 833, 841 (1980). Moreover, "[w]hile reliance was once considered to be the controlling criteria, recent decisions demonstrate that it has been replaced by the *purpose* and *effect* of the civil rule." *Milbradt,* 103 Wn.2d at 341, quoting *Taskett v. KING Broadcasting Co.,* 86 Wn.2d 439, 449, 546 P.2d 81 (1976).

> If the purpose of the new rule is promoted by applying it to cases that arose before the overruling decision, the balance is tipped toward retroactive application. If the purpose is unaffected by retroactive application, other factors, such as reliance or the administration of justice, will assume greater importance.

*Milbradt,* 103 Wn.2d at 341, quoting 55 Wash. L. Rev. at 838–39. Finally, we do not believe that retroactive application of *Brown* will "'cast substantial doubt upon the validity of numerous prior judgments, and would impose a great burden on the administration of justice by allowing many cases to be relitigated . . .'" *Milbradt,* 103 Wn.2d at 342, quoting Annot., *Comment Note—Prospective or Retroactive Operation of Overruling Decision,* 10 A.L.R.3d 1371, 1391 (1966).

In sum, we hold that the nature and purpose of *Brown* is clearly promoted by its retroactive application, and such application does little, if any, harm to any justifiable reliance interests or the administration of justice.

Finally, we address Dan's contention that the court erred by assigning a gross value of $100,000 to the personal injury claim. He contends that there was insufficient evidence for the court to arrive at such a lump sum valuation. We agree.

As previously noted, a trial court's findings of fact must be supported by substantial evidence. *Goodman v. Darden,*

*Doman & Stafford Assocs.,* 100 Wn.2d 476, 670 P.2d 648 (1983). Here, we do not find any evidence introduced at trial to support the court's factual finding that the personal injury claim has a gross value of $100,000. The only evidence introduced which has any bearing on this issue is the testimony of the attorney handling the claim, who first stated he had no opinion as to the value of the claim. Pressed further and in response to a question as to which general category, namely small, medium, or substantial, he would classify this claim, he stated, "I would not expect a verdict of less than $25,000, so I would probably place it in a, not less than a moderate or medium category and hopefully into the larger category." We do not believe that this testimony, without more, supports the court's finding that the claim has a value of $100,000. Nothing in the record reflects what higher values the attorney meant by his reference to the larger or substantial category he hoped for. Thus, we conclude there is insufficient evidence to support the court's finding that the claim has a value of $100,000.

Because we must remand for the court to value the community and separate aspects of the personal injury claim in accordance with our holding expressed above, additional evidence of the claim's value may be taken by the court. The recharacterization of the personal injury claim and its ultimate distribution by the trial court after an appropriate valuation without an adjustment in the distribution of all other assets of the parties, both separate and community or jointly owned, may be other than just and equitable as mandated by RCW 26.09.080. Accordingly, this case is remanded for the limited purpose of making an equitable division of all of the property of the parties owned by and valued as of the date of dissolution, with authority for the court to take and consider additional evidence as may be necessary for such purposes.

444

Reversed and remanded.

REED, J., concurs.
WORSWICK, C.J., concurs in the result.