[No. 25053-1-I.   Division One.   July 15, 1991.]

BOBBIE J. FOSTER, *Respondent,* v. WILLIAM B. THILGES, *Appellant.*

*David Anthony Kastle,* for appellant.

*Laurason T. Hunt,* for respondent.

BAKER, J.—William Thilges appeals the judgment dividing property at the termination of his relationship with Bobbie Foster. William Thilges and Bobbie Foster began living together at Foster's home in early 1975.[1] The next year Thilges moved into Foster's home on a full–time basis where they resided until they built a new home in 1979. Beginning in 1977, they established joint bank accounts. The record reflects that they pooled incomes and obtained a joint loan to build their home, that Thilges proposed marriage to Foster and gave her a ring, and that they engaged in various social and community activities while sometimes holding themselves out as husband and wife. Foster testified that she never intentionally represented herself as Mrs. Thilges, but that people assumed the couple was married.

Thilges and Foster owned several parcels of real property, some purchased prior to their relationship and others

---

[1]The trial court made extensive findings of fact, to which appellant has assigned no error, except at the close of his brief to ask for reversal of the findings of fact, conclusions of law and judgment. The findings of fact are thus taken as verities on appeal. *In re Marriage of Babbitt,* 50 Wn. App. 190, 192, 747 P.2d 507 (1987).

purchased during the relationship. Overall, the judgment awarded Thilges approximately $130,000 in property (in addition to his separate property), and Foster received $185,000.[2] The court noted that the unequal distribution of jointly owned property was based on leaving farm property worth $250,000 to Thilges as his separate property and on the financial position in which the award left the parties.

The court's conclusions of law specifically noted that

#6. Despite the substantially greater financial contributions that were made by the Defendant toward the acquisition of the aforementioned properties, under the principles and legal holdings in the cases of *Cummings v. Anderson,* 94 Wn.2d [135,] 145, [614 P.2d 1283 (1980)] and *Warden v. Warden,* 36 Wn. App. 693, [676 P.2d 1037 (1984),] the court finds that the property acquired by the parties became for all practical purposes just like community property, that is, owned equally by the parties subject to whatever equitable distribution that the court decides should be made in the case.

Thilges filed this timely appeal.

I

We first consider whether the trial court erred in characterizing Thilges' and Foster's relationship as a pseudomarital relationship and then in applying RCW 26.09.080 to the division of property. The trial court found that "[t]he parties' relationship was a long–term, stable, pseudomarital relationship".

In *Warden v. Warden,* 36 Wn. App. 693, 676 P.2d 1037, *review denied,* 101 Wn.2d 1016 (1984), the parties began living together in 1963. They held themselves out as husband and wife, filing joint tax returns, taking out a mortgage signed by both, and purchasing a house, whose title was conveyed to Charles Warden and Denise C. Warden, his wife, and having two children. Charles left in 1972, married another woman, and in 1978 Denise sued to continue child support and to establish ownership of the house.

---

[2] In rendering its oral decision, the court gave the net value of the Bothell home as $107,000. This was corrected to $122,000 in the written findings. Thilges assigns error to this correction. We reject his argument. The court had the power to correct its oral decision at any time prior to entry of written findings.

The appellate court affirmed the award of child support and half interest in the property to Denise. Quoting *Latham v. Hennessey*, 87 Wn.2d 550, 554, 554 P.2d 1057 (1976), the *Warden* court noted the following approach in dividing property in such cases: .

> A court could ascertain whether there exists a long–term, stable, nonmarital family relationship. Such relevant factors include continuous cohabitation, duration of the relationship, purpose of the relationship, and the pooling of resources and services for joint projects.

*Warden v. Warden*, 36 Wn. App. at 697.

██ Finally, the *Warden* court concluded that RCW 26.09.080[3] should govern the disposition of the property at the termination of such a "relationship which is tantamount to a marital family except for a legal marriage." *Warden v. Warden*, 36 Wn. App. at 698.

In a leading case dealing with the disposition of the property accumulations of an unmarried couple, *In re Marriage of Lindsey*, 101 Wn.2d 299, 678 P.2d 328 (1984), the Washington Supreme Court rejected the so–called *Creasman* presumption that

> [p]roperty acquired by a man and a woman not married to each other, but living together as husband and wife, is not community property, and, *in the absence of some trust relation,* belongs to the one in whose name the legal title to the property stands.

---

[3]RCW 26.09.080 provides:

"In a proceeding for dissolution of the marriage, legal separation, declaration of invalidity, or in a proceeding for disposition of property following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall, without regard to marital misconduct, make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors including, but not limited to:

"(1) The nature and extent of the community property;

"(2) The nature and extent of the separate property;

"(3) The duration of the marriage; and

"(4) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse with whom the children reside the majority of the time."

*Lindsey,* 101 Wn.2d at 302 (quoting *Creasman v. Boyle,* 31 Wn.2d 345, 351, 196 P.2d 835 (1948)).

The *Lindsey* court instead adopted "the rule that courts must 'examine the [meretricious] relationship and the property accumulations and make a just and equitable disposition of the property.'" *Lindsey,* 101 Wn.2d at 304 (quoting *Latham v. Hennessey,* 87 Wn.2d 550, 554, 554 P.2d 1057 (1976)).

In *Lindsey,* Carl and Lana lived together for less than 2 years before their marriage, which lasted 5 years. During the 2 years before marriage a barn/shop was constructed on Carl's separate property. The building burned during the marriage and the trial court applied the *Creasman* presumption to characterize the insurance proceeds of over $85,000 as Carl's separate property. The *Lindsey* court reversed and remanded the case to the trial court to apply a just and equitable approach to determine Lana's interest in the proceeds.

Here, Foster and Thilges lived together approximately 10 years. They bought their first property together on Camano Island while Thilges was still married to another woman. They evidenced their mutual trust by putting the property in Foster's name because of Thilges' marital status. Foster later formally conveyed half interest in the property to Thilges.

The couple built a home together, jointly obtained a construction loan, and both contributed considerable physical labor to the project. Foster insisted that she be half owner if they were to build the home together and Thilges conveyed half interest in the land to her, although at trial he maintained that only the house was jointly owned and he had conveyed the land merely to satisfy loan requirements of the bank.

The couple had joint bank accounts commencing in 1977 and they combined their earnings. Although it is not necessary for a couple to represent themselves as husband and wife to establish a pseudomarital relationship, we note that in at least some of their social activities, Foster and Thilges

were known as husband and wife.[4] They made retirement plans together, purchasing property where they would retire together if, as Thilges testified, "we made it". We find that because there was continuous cohabitation for over 10 years during which the parties conducted themselves like a married couple and pooled their resources and services for joint projects, the trial court was correct in finding that Thilges and Foster established a stable, long–term pseudomarital relationship. Thus, there was no error in following *Warden* and applying RCW 26.09.080 to divide the property acquired during the parties' relationship.

## II

We next consider whether the trial court erroneously ignored the parties' intentions to hold the property as tenants in common when it divided the property.

Thilges contends that *Lindsey* requires the court to divide property based on the parties' intentions, *i.e.*, to hold as tenants in common, and that *Cummings v. Anderson,* 94 Wn.2d 135, 614 P.2d 1283 (1980) requires determination of respective shares of such property based upon relative contributions toward its acquisition, and distribution in accordance with the respective shares.

As noted above, the court in *Lindsey* required a just and equitable distribution of assets acquired during a stable, long–term, nonmarital relationship. In *Cummings,* the couple acquired a real estate contract as tenants in common prior to their marriage. They married and lived together 7 months. Together they paid approximately $2,800 on the contract. When they separated, approximately $16,000 remained to be paid. A default dissolution was granted and the ex–wife subsequently brought suit for equal partition of

---

[4]Thilges in his brief contends that "both parties denied having held themselves out as husband and wife at any time during their relationship." What Foster actually testified to at trial was although she did not intentionally tell anyone she was Mrs. Thilges, Foster was "aware a lot of people assumed Bill and I were married. We lived as though we were married. We had a family relationship as though we were married, everything we did, and I would not think I would have to misrepresent myself as actually being legally Mrs. Thilges."

the property. At time of trial, the ex–husband had reduced the unpaid balance on the contract to $8,700. There was no contention that the property was ever community property. The court stated:

> Where, as here, the character of ownership is that of cotenancy, and the instrument by which the property was acquired is silent as to the respective interests of the co–owners, it is presumed that they share equally. However, when in rebuttal it is shown that they contributed unequally to the purchase price, a presumption arises that they intended to share the property proportionately to the purchase price.

*Cummings,* 94 Wn.2d at 140.

By contrast, Thilges' and Foster's pseudomarital relationship lasted 10 years. While Thilges argues that his and Foster's intention was to own all the property as tenants in common,[5] Foster testified that the couple intended "anything that we bought or anything that we acquired at that time would be joint, shared equally." The trial court only found two parcels of real property held as tenants in common, and awarded one to each party. As to those two parcels, the ownership documents do not appear in the record before this court. Thus, Thilges fails to demonstrate that title was taken as tenants in common. Even if the documents of title did so state, *Cummings* would not control where the property was acquired jointly by a couple who lived together for 10 years as husband and wife, intending to share their acquisitions equally, as Foster testified. Where the relationship was long term, stable, pseudomarital and the undertakings were joint projects as in the instant case, *Warden* and *Lindsey* make clear that the couple's property is to be divided justly and equitably, applying community property principles set forth in RCW 26.09.080. We find that the trial court did not err in choosing to apply those principles in dividing the property.

---

[5]Thilges asserts that all notes, mortgages and deeds were acquired as "William Thilges, a single person, and Bobbie Foster, a single person, as tenants in common". The record does not support this assertion.

## III

Finally, Foster contends that this court should award attorney's fees to her pursuant to RAP 18.1 and RCW 26.09.140.[6]

█ RAP 18.1 permits the recovery of attorney's fees on appeal where authorized by applicable law. RCW 26.09.140 permits the award of attorney's fees in "any proceeding under this chapter". The appellate court in *Western Comm'ty Bank v. Helmer,* 48 Wn. App. 694, 740 P.2d 359 (1987) rejected Helmer's argument that the trial court erred in not awarding attorney's fees to her under RCW 26.09-.140. At issue was a mortgage foreclosure dating from Helmer's prior meretricious relationship with another defendant. The *Helmer* court noted that *Warden v. Warden, supra,* had applied RCW 26.09.080 to property disposition at the end of a meretricious relationship, but concluded that "it is for the Legislature to change or amend the statute which now grants attorney fees only where there is or has been a marital relationship between the parties." *Helmer,* 48 Wn. App. at 699. *Helmer* further quoted *Davis v. Department of Empl. Sec.,* 108 Wn.2d 272, 278–79, 737 P.2d 1262 (1987), stating "the extension of property distribution rights of spouses to partners in meretricious relationships does not elevate meretricious relationships themselves to the level of marriages for any and all purposes." *Helmer,* 48 Wn. App. at 699. We agree. *Warden* only applied RCW 26.09.080 by analogy to the situation of a meretricious relationship. *See* Cross, *The Community*

---

[6]RCW 26.09.140 provides in part:

"The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorney's fees or other professional fees in connection therewith, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or enforcement or modification proceedings after entry of judgment.

"Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorney's fees in addition to statutory costs."

*Property Law in Washington (Revised 85)*, 61 Wash. L. Rev. 13, 24, 26 n.60 (1986).

Foster's request for attorney fees is denied. The decision of the trial court is affirmed.

COLEMAN and FORREST, JJ., concur.