[No. 34139-1-I.  Division One.  June 5, 1995.]

ZION CONSTRUCTION, INC., *Plaintiff*, v. RONALD G. GILMORE, *Appellant*, DIANNE THOMPSON, *Respondent*.

---

*David Kirkland,* for appellant.
*Rodney Pierce*, for respondent.

FORREST, J.*— Ronald G. Gilmore (Gilmore) appeals the trial courts determination that he and Dianne Thompson (Thompson) had a quasi-marital relationship[1] which justified the application of RCW 26.09.080[2] by analogy. He also challenges the trial courts distribution of their property, particularly the characterization of the Vashon home. We remand this matter to the trial court for reconsideration of the distribution of property in light of the Supreme Court's holding in *Connell v. Francisco*, 127 Wn.2d 339, 898 P.2d 831 (1995).

The trial court classified its determination that Gilmore and Thompson were engaged in a quasi-marital relationship as both a finding of fact and a conclusion of law. Because the determination has direct legal effect, we agree with Gilmore that it is properly termed a conclusion of law. We, however, disagree with Gilmore's contention that the trial court erred in concluding that he and Thompson had a quasi-marriage.

In *In re Marriage of Lindsey*, 101 Wn.2d 299, 305, 678 P.2d 328 (1984), the court suggested several factors to

---

*Judge Marshall Forrest is serving as a judge pro tempore of the Court of Appeals pursuant to CAR 21(c).

[1]The trial court used the term "long-term, stable meretricious relationship" to describe Gilmore's and Thompson's relationship. *Webster's Dictionary* defines meretricious as "relating to a prostitute" or "having a harlot's traits". *Webster's Third New International Dictionary* 1413 (1966). We prefer the term quasi-marital relationship. *See Peffley-Warner v. Bowen*, 113 Wn.2d 243, 246 n.5, 778 P.2d 1022 (1989) (recognizing the offensive character of the word meretricious).

We chose the term "quasi-marital" relationship or "quasi-marriage" because the use of the term "quasi" has a long and well accepted history in legal precedent. The task of courts in cases involving long-term cohabitation is to determine if the relationship is sufficiently similar to a marriage to warrant treating it as a marriage for purposes of property distribution. Courts are faced with similar problems when asked to determine if a "quasi-contract" or a "quasi-trust" exists.

[2]RCW 26.09.080 governs the disposition of property during a dissolution.

consider when determining if a quasi-marital relationship exists. These factors include "continuous cohabitation, duration of the relationship, purpose of the relationship, and the pooling of resources and services for joint projects". *Lindsey*, at 304. The *Lindsey* court, however, declined to adopt a rigid set of requirements for determining when a couple's relationship constituted a quasi-marriage. It concluded that a court should examine each case on its facts. *Lindsey*, at 305.

The trial court found that Gilmore and Thompson began cohabiting in 1985 and continued living together until 1990, first in Salt Lake City and then in Seattle. The trial court also found that Gilmore and Thompson were engaged to be married shortly after they began cohabiting and announced their engagement to family and friends. Gilmore repeated his intention to marry Thompson in the years to come. It found that Gilmore and Thompson pooled their resources for the common good and both contributed their resources toward the common household.[3] Although they kept separate bank accounts, they occasionally contributed to the account of the other.

The trial court also found that Thompson paid some of Gilmore's separate expenses, including taxes on his separate property, payment of his Chapter 13 bankruptcy obligation, buying presents for his family, and payment of a debt Gilmore owed his father. Thompson contributed to the closing costs on the Vashon property, rent, vacation expenses, furniture, food and utilities, landscaping and house repair expenses. She also contributed her labor to

---

[3]Gilmore argues that the trial court's finding that the couple pooled their resources contradicts its finding that Thompson retained sole control over her money until she herself disbursed it. We disagree. The trial court found that Thompson used her money to pay joint household expenses as well as some of Gilmore's separate expenses. This use of resources to pay common expenses constitutes pooling regardless of whether Thompson had control over her own money. Moreover, Thompson retained control over Gilmore's checkbook and apparently determined whose resources would be used to pay which expenses.

the joint household by maintaining Gilmore's checkbook, writing the bills, preparing letters to his creditors, doing housework and gardening and assisting in renovations of the boat.

Gilmore concedes that the lack of a verbatim report of proceedings prevents him from contending that these findings are not supported by substantial evidence. Therefore, the trial court's findings are verities on appeal.

The trial court's findings support the conclusion that Gilmore and Thompson were in a quasi-marital relationship. In a very similar case, *In re Marriage of Hilt*, 41 Wn. App. 434, 704 P.2d 672 (1985), the court upheld the trial court's determination that Dan and Joyce Hilt's four years of cohabitation constituted a quasi-marital relationship. The court noted that "Dan proposed marriage 3 months after the couple began living together and told Joyce that everything would be jointly owned". *Hilt*, at 438. It also considered the fact that, although the couple had separate accounts, Joyce managed both of their bank accounts and each had contributed some funds to the others account. *Hilt*, at 438-39. Both Dan and Joyce viewed their home prior to purchasing it, and both signed the listing agreement when it was later listed for sale. *Hilt*, at 439. Joyce paid some of the taxes and contract expenses on the property from her separate account. *Hilt*, at 439.

We conclude that under *Lindsey* and *Hilt*, the trial court did not err in concluding that Gilmore and Thompson's five years of cohabitation constituted a long-term, stable quasi-marital relationship.

Gilmore next contends that even if he and Thompson were engaged in a quasi-marital relationship, the trial court nevertheless erred in concluding that the Vashon home constituted joint or community property.[4] In

---

[4]Gilmore assigns error to the trial court's division of all the assets acquired during the cohabitation. This assignment of error presumably encompasses not only the division of the Vashon home but the boat and pension as well. In his brief, however, Gilmore appears to argue only that the division of the Vashon

light of *Connell v. Francisco*, 127 Wn.2d 339, 898 P.2d 831 (1995), we agree.[5] *Connell* holds that in dividing the property following the termination of a meretricious relationship, property that would be separate if the parties had been married is not before the court for division. In this case, while there is some ambiguity in the evidence, it appears that a portion of the equity in the Vashon residence would have been separate if the parties had been married, and a portion would have been community. Accordingly, we remand for the court to determine what percentage of the equity would have been community and what part would have been separate if the parties had been married from September, 1985 to September, 1990. The court is authorized, but not required, to take additional testimony for this purpose. Once the court has determined the value of the property properly before it, it should make a fair and equitable division of such assets. The court, as previously noted, need not reexamine the community/separate status of any of the other assets since that issue was not before this court on appeal. The court is not in any way bound by its previous allocation, 60 percent to Gilmore and 40 percent to Thompson, but should exercise its discretion in light of all the circumstances, including the respective financial situation of the parties upon the termination of the relationship.

Remanded for reconsideration of the property division in a manner not inconsistent with this opinion.

COLEMAN and BECKER, JJ., concur.

---

property was in error. An assignment of error for which no argument is presented is deemed waived. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 808, 828 P.2d 549 (1992). Therefore, Gilmore has waived any argument that the trial court mischaracterized the boat or pension as pooled property.

[5]The trial court's decision was made prior to *Connell*.

Cause remanded to Court of Appeals at 127 Wn.2d 1022 (1995).

After modification, further reconsideration denied February 20, 1996.