[No. 21704-0-II.    Division Two.    February 5, 1999.]

SAMMI PENNINGTON, *Respondent*, v. CLARK M. PENNINGTON, *Appellant*.

*Edward M. Lane* of *Smith Alling Lane*, for appellant.

*Michael J. McKasy* of *Troup, Christnacht, Ladenburg, McKasy & Durkin, Inc., P.S.*, for respondent.

HOUGHTON, J. — Clark M. Pennington appeals from a trial court award of $214,200 in favor of Evelyn Van Pevenage (also known as Sammi Pennington). He contends that the trial court erred in concluding that Van Pevenage and Pennington had a meretricious relationship and in characterizing and dividing property. We agree that there were insufficient facts to establish a "quasi-marriage" and, therefore, the trial court erred in concluding that there was a meretricious relationship. We reverse and remand for further proceedings.

## FACTS

In 1983, Van Pevenage met Pennington while each was married to someone else. By the end of 1983, Pennington separated from his wife and moved onto marital property located in Kapowsin. Also in 1983, Van Pevenage dissolved her marriage. Van Pevenage and Pennington began a sexual relationship that lasted throughout their cohabitation.

Van Pevenage moved into Pennington's residence in August 1985. The Kapowsin residence was an airplane hangar with an unfinished apartment upstairs. Van Pevenage moved in her furniture and belongings, purchased and

installed vinyl flooring and carpeting. There were other improvements made to the home such as installing cabinets, a wood stove, and a shower.

Both Van Pevenage and Pennington helped in maintaining the home and were actively involved in entertaining friends and family members. They also enjoyed activities related to classic cars and airplanes. Van Pevenage purchased food and other supplies and Pennington paid the mortgage and utilities.

During this time, Van Pevenage worked full-time as a bartender and Pennington owned and operated Exacto, a manufacturing plant for aircraft and machine parts. In 1985, Pennington and his business partner divided the business.

In December 1988, Pennington sold the home in Kapowsin and the couple moved into a new home in Yelm. Pennington built the Yelm home by borrowing $135,000 using income derived from renting his other property. The loan and home were in Pennington's name. Van Pevenage helped design and decorate the home.

Following Pennington's divorce in October 1990, Van Pevenage wanted to marry him. She testified that in 1986, Pennington proposed to her and purchased an engagement ring for her. Pennington denied that it was an engagement ring and described it as a cocktail ring. In April 1991, when Pennington refused to marry Van Pevenage, she moved out of the Yelm residence for a few weeks.

Shortly after Van Pevenage returned, Pennington suffered a stroke in June 1991. Van Pevenage took Pennington to the hospital and stayed with him during his stay. The entries made by the physicians referred to Van Pevenage as Pennington's "wife." She also quit her job to care for Pennington after his discharge.

During the time the couple lived together, Pennington permitted Van Pevenage to drive his numerous cars and paid for her car insurance. Starting in 1991, Exacto paid Van Pevenage a $508 biweekly salary. She also had check-signing privileges on the corporate account. Van Pevenage

continued to receive the income, sometimes in lower amounts, until February 1996. She also received medical benefits from Exacto and Pennington listed her as the beneficiary of his life insurance policy.

Van Pevenage held department store and credit cards in the name of Sammi Pennington. The Yelm·phone book showed a listing for "Clark and Sammi Pennington." One of the couple's friends of five or six years testified that, until the day of trial, she did not even know that Sammi Pennington was known by any other name. That friend and others testified that Van Pevenage and Pennington cared for each other as a husband and wife would.

But Pennington and Van Pevenage also had trouble in their relationship. At one point, Pennington asked Van Pevenage not to work as a bartender, but Van Pevenage did not want to quit her job. In March 1993, Van Pevenage moved out again and did not return until 18 months later, in October 1994. In September 1994, Van Pevenage moved in with another man for one month. But she continued to see Pennington and to attend functions and travel with him. In October 1995, after spending another year at the Yelm residence, Van Pevenage moved out permanently.

In February 1996, Van Pevenage filed a complaint for dissolution of a meretricious relationship. In its findings of fact and conclusions of law, the trial court determined that the parties were in a meretricious relationship despite the periods of separation. The trial court also determined that community property was acquired during their relationship and awarded $214,200 to Van Pevenage as a just and equitable disposition of their property. Pennington appeals.

## ANALYSIS
### Meretricious Relationship

Pennington first contends that the trial court erred in concluding that Van Pevenage and Pennington had a meretricious relationship. Pennington asserts that his cohabitation with Van Pevenage was neither stable nor

marriage-like, because of the periods the couple lived separately and because Pennington was still married between 1985 and 1990.[1]

The standard of review is whether substantial evidence supports the trial court findings of fact, which in turn support the court's conclusions of law. *In re Marriage of Hilt*, 41 Wn. App. 434, 438, 704 P.2d 672 (1985). A meretricious relationship is a quasi-marital relationship "where both parties cohabit with knowledge that a lawful marriage between them does not exist." *Connell v. Francisco*, 127 Wn.2d 339, 346, 898 P.2d 831 (1995) (citing *In re Marriage of Lindsey*, 101 Wn.2d 299, 304, 678 P.2d 328 (1984)).

Our Supreme Court has refused to adopt rigid guidelines

---

[1]Pennington assigns error to findings of fact III-VIII, and X-XIII and conclusions of law II-V, which are summarized and quoted:

Van Pevenage and Pennington had a continual and lengthy relationship during which there were two periods of separation similar to those that might be experienced by a married couple. The purpose of the relationship included companionship, friendship, love, a sexual relationship and mutual support and caring. Pennington's marital status with another woman did not preclude finding a meretricious relationship.

The parties intended to be in a long-term, lasting relationship. Family members and friends considered them a couple. The parties pooled their resources for services and joint projects. The parties were in a meretricious relationship.

The following property was at issue: (1) business machines (not at issue on appeal); (2) home in Yelm; (3) home furnishings; (4) automobiles; and (5) Piper Cub airplane. The home and furnishings, automobiles and airplane were purchased during the relationship and are presumed to be owned by both. A party asserting that it is separate property must rebut the presumption. Pennington made no effort to trace any funds used to his separate property and therefore failed to rebut the presumption. The value of the assets totaled $357,000 (the value is not disputed on appeal).

"The Court may look to RCW 26.08.090 for guidance when making a just and equitable distribution of property. In light of the superior economic position of Mr. Pennington (ownership of a successful business with machines having a value of $219,000-$231,000, a portion of the building in which the business is housed, two airplanes as separate property with one of the airplanes having a value of $35,000, a 1929 Model-A with trailer worth $25,000, and his earning capacity), this Court concludes that a fair and equitable division of property requires an award to Sammi Van Pevenage in the amount of $214,200. Of that sum she already has two cars in her possession valued at $21,500. She is awarded the 1969 Camaro Pace Car and 60% of the cash proceeds from the sale of the 1987 Winnebago Motor Home or $9,000. This leaves a balance of $167,700 to be secured by a lien on the home in Yelm."

for finding that a meretricious relationship exists and has ruled that such a finding depends upon the facts of each case. *Lindsey*, 101 Wn.2d at 305. In analyzing whether a meretricious relationship exists, a court may consider the following nonexclusive factors: (1) continuity of cohabitation; (2) duration of the relationship; (3) purpose of the relationship; (4) pooling of the resources and services to accomplish common goals and projects; and (5) intent of the parties. *Connell*, 127 Wn.2d at 346.

The courts in *Connell* and *Lindsey* upheld the trial courts' conclusions that the relationships were meretricious. Both *Connell* and *Lindsey* are distinguishable on their facts. In *Connell*, (1) neither "meretricious party" was simultaneously married to another. (2) The parties did not contest the existence of a meretricious relationship. (3) Rather, they intended to marry, had sought fertility counseling, and had made major career and residential moves based upon their committed relationship. The main issue was division of separate property, that is: whether it was also before the court for division in the same way that the parties agreed the property acquired during the relationship was divisible.

In *Lindsey*, the parties married and community property laws directly applied to their property distribution. But because they had lived together two years before marrying, the court added those two years in determining the length of the marriage. In *Connell*, there was no eventual marriage as in *Lindsey*, but the parties were engaged to be married, sought to have children together, and agreed that their relationship was meretricious, such that the court characterized as "marriage-like" and applied community property law by analogy.

Pennington and Van Pevenage's relationship differed significantly from the relationships in *Connell* and *Lindsey*. Pennington contested the existence of a meretricious relationship. Although Pennington and Van Pevanage lived together between 1985 and 1991, Pennington was married to another woman until 1990. He expressly refused Van Pe-

venage's requests to marry, even after his existing marriage was legally dissolved. And, later in their relationship, Van Pevenage moved in with another man. Thus, during most of the period that the trial court terms "meretricious," the parties were not free to marry legally, did not intend to marry, or punctuated their living together with a third party relationship.

There is no bright-line rule regarding the formation of a meretricious relationship when one party is still legally married to another. But Division One held that a meretricious relationship existed when one party was still legally married to another. *Foster v. Thilges*, 61 Wn. App. 880, 812 P.2d 523 (1991). In *Foster*, the court noted that the couple:

> lived together approximately 10 years. They bought their first property together on Camano Island while Thilges was still married to another woman. They evidenced their mutual trust by putting the property in Foster's name because of Thilges' marital status. Foster later formally conveyed half interest in the property to Thilges.
>
> · The couple built a home together, jointly obtained a construction loan, and both contributed considerable physical labor to the project. . . .
>
> The couple had joint bank accounts commencing in 1977 and they combined their earnings. Although it is not necessary for a couple to represent themselves as husband and wife to establish a pseudomarital relationship, we note that in at least some of their social activities, Foster and Thilges were known as husband and wife.

*Foster*, 61 Wn. App. at 884. *But see Hilt*, 41 Wn. App. at 438-39 (sharing of bank accounts is not a dispositive factor).

The facts here are distinguishable from those in *Foster*. Van Pevenage moved in with Pennington and made the Kapowsin hangar her home. But Van Pevenage's name did not appear on the loan documents of the title of the Yelm residence. Although others considered them a couple, Pennington consistently refused to marry Van Pevenage and never claimed they were engaged.

■ Finally, Pennington asserts that an absence or termination of the relationship during a cohabitation period is treated differently from that of a traditional marriage. He argues that termination of a marriage is strictly governed by statute, although the acts of unmarried cohabitants are not. Thus, he asserts that the trial court erred when it compared Van Pevenage's absences with those occurring during a marriage because it could not determine with certainty whether the alleged marriage-like relationship terminated when Van Pevenage left the residence and resided with someone else for a period of time.

Although we hold that the facts are not sufficient to justify finding a meretricious relationship, we note that the trial court did not err when it concluded, "the periods of separation do not require an analysis of separate periods of cohabitation as urged by the defendant [sic]. Rather, the Court must look at the entire time of the relationship commencing in 1985." Division One has held that a trial court may properly consider the length and purpose of the relationship in determining that a meretricious relationship existed, although the parties lived apart for prolonged periods. *Warden v. Warden*, 36 Wn. App. 693, 698, 676 P.2d 1037, *review denied*, 101 Wn.2d 1016 (1984).

In summary, there is not sufficient evidence that the parties intended their relationship to be "marriage-like." Pennington contested the existence of a meretricious relationship, remained married to another during much of his relationship with Van Pevenage and refused to marry Van Pevenage after his divorce. Thus, there was not substantial evidence in the record to support the trial court's findings of fact and conclusion of law that a meretricious relationship existed.

Because we hold that the trial court erred in concluding that there was a meretricious relationship, we reverse and remand for a distribution of property consistent with this opinion.

MORGAN and HUNT, JJ., concur.

Review granted at 138 Wn.2d 1016 (1999).