[No. 22616-2-II.   Division Two.   February 11, 2000.]
FRANK VASQUEZ, *Respondent*, v. JOSEPH HAWTHORNE, *as Personal Representative, Appellant.*

*Ross Edwin Taylor,* for appellant.

*Terry James Barnett* of *Rumbaugh, Rideout & Barnett,* for respondent.

BRIDGEWATER, C.J. — Joseph Hawthorne, appointed personal representative for the intestate estate of Robert Schwerzler, appeals the summary judgment award of Schwerzler's estate in its entirety to Frank Vasquez, a person who claims to have been in a meretricious relationship with Schwerzler. We hold that a meretricious relationship is a quasi-marital relationship, and because persons of the same sex may not be legally married, a meretricious relationship cannot exist between members of the same sex. We therefore reverse.

Vasquez and Schwerzler lived together from 1967 to 1995, with the exception of two years during which they lived in different apartments in the same building. When Schwerzler died, he had several assets in his name including: the house he and Vasquez shared, a life insurance policy, two automobiles, and a checking account. No will for Schwerzler was found.

Vasquez filed a claim against the estate, asserting that he and Schwerzler had been homosexual life-partners and that he was entitled under the case law for division of property in meretricious relationships to a share of the community property. Joseph Hawthorne, the appointed personal repre-

sentative for the estate, denied Vasquez's claim. Vasquez took his claim to superior court and the court ruled in his favor, awarding nearly all of the property to Vasquez on partial summary judgment. Vasquez's claims of implied partnership and constructive trust remain to be tried. Hawthorne appeals.

## I. Meretricious Relationship

Hawthorne contends that the trial court erred by treating Vasquez's relationship with Schwerzler as a meretricious relationship because as a matter of law, a same-sex relationship cannot be a meretricious relationship. This is an issue of first impression in Washington.

The term "meretricious relationship" is a term of art in Washington, and has been defined as "a stable, marital-like relationship where both parties cohabit with knowledge that a lawful marriage between them does not exist." *Connell v. Francisco*, 127 Wn.2d 339, 346, 898 P.2d 831, 69 A.L.R.5TH 705 (1995). In the first major case dealing with the division of property at the end of a meretricious relationship, the Supreme Court of Washington applied a bright-line rule regarding the property rights of intimate, unmarried cohabitants. In *Creasman v. Boyle*, 31 Wn.2d 345, 347-49, 196 P.2d 835 (1948), the couple cohabited for seven years, holding themselves out as husband and wife until the woman's death. During their cohabitation, the woman entered into a contract to purchase their shared residence, making the down payment by exchanging the man's automobile. *Id.* at 348. She took title to the residence in her name alone, but made payments using money the man earned while they lived together. *Id.* at 348-49. After the woman's death, the man brought an action to obtain title to the residence. *Id.* at 346. The trial court awarded him a one-half interest in the property, noting that although he had been the sole financial contributor, the woman had contributed by way of her "thrift" and "housekeeping." *Id.* at 350-51.

On appeal, the Supreme Court reversed and ordered the trial court to award the residence to the woman's estate. *Id.* at 358. The court held that "property acquired by a man and a woman not married to each other, but living together as husband and wife, is not community property, and, in the absence of some trust relation, belongs to the one in whose name the legal title to the property stands." *Id.* at 351 (emphasis omitted). Furthermore, in what became known as the *"Creasman* presumption," the court refused to find a resulting trust in favor of the man, holding that "under these circumstances and in the absence of any evidence [of intent] to the contrary, it should be presumed as a matter of law that the parties intended to dispose of the property exactly as they did dispose of it." *Id.* at 356 (emphasis omitted).

The Supreme Court later rejected the *Creasman* presumption in *In re Marriage of Lindsey*, 101 Wn.2d 299, 678 P.2d 328 (1984). Instead, the court adopted two new theories: (1) that courts may apply community property laws by analogy to determine property ownership at the end of a meretricious relationship, and (2) that courts could distribute property acquired during such a relationship on a just and equitable basis.

Further explanation and expansion of the meretricious relationship body of law came in *Connell v. Francisco*, which also involved the division of property between an unmarried man and a woman who had lived together. The court did not precisely define when a meretricious relationship exists. Instead, it left the question to the courts, as a question of application of law to fact to be determined on a case-by-case basis. According to *Connell*'s definition, a relationship must satisfy three elements to be meretricious: (1) it must be "stable," (2) it must be "marital-like," and (3) the parties must "cohabit with knowledge that a lawful marriage between them does not exist." *Connell*, 127 Wn.2d at 346.

It is only after the trial court determines according to

the factors that a meretricious relationship exists that the couple will be accorded "pseudo" community property treatment.

> [T]he trial court then: (1) evaluates the interest each party has in the property acquired during the relationship, and (2) makes a just and equitable distribution of the property. *Lindsey*, 101 Wn.2d at 307[, 678 P.2d 328]; *Community Property Deskbook* § 2.64. The critical focus is on property that would have been characterized as community property *had the parties been married*.

*Connell*, 127 Wn.2d at 349 (emphasis added). The court in *Connell* also stated that in a "meretricious relationship," the parties have chosen not to get married and the court will not change that. *Id.* The court was very clear in distinguishing a meretricious relationship from a marriage:

> Until the Legislature, as a matter of public policy, concludes meretricious relationships are the legal equivalent to marriages, we limit the distribution of property following a meretricious relationship to property that would have been characterized as community property *had the parties been married*.

*Id.* at 350 (emphasis added).

We deduce from *Connell* and its predecessors that a "meretricious relationship" is one where the parties may legally marry.[1] And it is clear that these courts implicitly assumed that a meretricious relationship can exist only between a man and a woman.[2] In Washington, there are statutory limitations on who may marry. We hold that these limitations are relevant in determining whether a relationship

---

[1] We note that this is consistent with our own treatment of opposite-sex claims of meretricious relationships. *See Pennington v. Pennington*, 93 Wn. App. 913, 971 P.2d 98 (1999) (holding that it was significant that the man was married to another woman during the first five years of cohabitation and that he repeatedly refused to marry appellant, even after his divorce).

[2] For example, *Creasman* makes repeated reference to "a man and a woman," *see, e.g., Creasman*, 31 Wn.2d at 351, and all of the cases discuss the requirement that the parties hold themselves out as "husband and wife."

is sufficiently "marital-like" to be meretricious. To marry, parties must be over the age of 18 and mentally competent. *See* RCW 26.04.010(1). Further, neither party may be married to another person, *the parties must be of the opposite sex*, and the parties must not be nearer of kin than second cousins. *See* RCW 26.04.020 (emphasis added).[3]

A meretricious relationship is a "quasi-marital" relationship. *See, e.g., Pennington v. Pennington*, 93 Wn. App. 913, 917, 971 P.2d 98 (1999); *Zion Constr., Inc. v. Gilmore*, 78 Wn. App. 87, 89, 895 P.2d 864 (1995). The Court of Appeals in *Zion*, explained in a footnote:

> We chose the term "quasi-marital" relationship or "quasi-marriage" because the use of the term "quasi" has a long and well accepted history in legal precedent. The task of courts in cases involving long-term cohabitation is to determine if the relationship is sufficiently similar to a marriage to warrant treating it as a marriage for purposes of property distribution.

*Zion*, 78 Wn. App. at 89 n.1. By holding that a meretricious relationship is a "quasi-marital" one, we accord some of the protections of marriages and community property law.[4] We find no precedent for applying the marital concepts, either rights or protections, to same-sex relationships; all of the reported cases concerning "meretricious relationships" have been between men and women, and community property law clearly applies only to opposite-sex relationships.[5] Vasquez argued that a meretricious relationship could exist between father-son, mother-daughter, or any relationship. Indeed, he maintained that the court had established a different type of property ownership based upon the "meretricious criteria." We disagree. We find no legal basis for judicially extending the rights and protections of marriage

---

[3]Although the Legislature only recently amended the marriage statute to explicitly exclude same-sex marriage, the law has been interpreted that way for many years. *See Singer v. Hara*, 11 Wn. App. 247, 522 P.2d 1187, *review denied*, 84 Wn.2d 1008 (1974).

[4]We need not address which protections apply; *Connell*, 127 Wn.2d at 348-49, has discussed these at length.

[5]Community property is defined by statute as property acquired after marriage by either husband or wife or both. RCW 26.16.030.

to same-sex relationships. Such an extension of the law is for the Legislature to decide, not the courts. Furthermore, we note that Vasquez potentially has other legal recourse in the form of constructive trust and implied partnership.

We hold that a same-sex relationship cannot be a meretricious relationship because such persons do not have a "quasi-marital" relationship. Persons of the same sex may not legally marry and such a relationship is not entitled to the rights and protections of a quasi-marriage, such as community property-like treatment. Because of our determination, we do not reach other assignments of error.[6]

## II. Attorney Fees

The trial court transferred all of the property out of the estate to Vasquez. It should order the transfer of the property back into the estate, and we hold that Hawthorne is entitled to his attorney fees and costs for appeal from the estate under RCW 11.96A.150 and RCW 11.48.210 and in compliance with RAP 18. An award for attorney fees below must await the outcome of the litigation and consideration by the trial court.

The order of partial summary judgment is reversed.

Houghton and Armstrong, JJ., concur.

Reconsideration denied March 30, 2000.

Review granted at 141 Wn.2d 1025 (2000).

---

[6]Hawthorne invites us to comment upon the rulings made as to the affidavit of Vasquez concerning the Dead Man's Statute, RCW 5.60.030. At trial, Vasquez's testimony, not his affidavit, will be offered. The trial court will have to rule as to each statement, if offered. Therefore, we decline to make an advisory evidentiary ruling on this issue.