[No. 49837–7.   En Banc.   March 8, 1984.]

*In the Matter of the Marriage of* CARL R. LINDSEY, *Respondent, and* LANA M. LINDSEY, *Appellant.*

*Hennings, Maltman, Weber & Reed,* by *Douglass A. North* and *Wilbur H. Sebree; Susan J. Dick* and *Platt, Irwin, Colley & Oliver,* for appellant.

*J. Rex Behrhorst, Brent Normoyle, Susan J. Owens,* and *Gary L. Sund,* for respondent.

DOLLIVER, J.—Appellant Lana M. Lindsey alleges the trial court erred in utilizing the presumption of *Creasman v. Boyle,* 31 Wn.2d 345, 196 P.2d 835 (1948) to characterize and distribute property upon dissolution of a marriage which was preceded by a nonmarital family relationship.

In October 1974 appellant and respondent Carl R. Lindsey began a meretricious relationship. The parties subsequently married in June 1976. Although they had no children during this marriage, each had a child from a previous marriage living with them. The parties separated in November 1981. Respondent filed a petition for dissolution in December 1981 which was granted in March 1982.

At trial there was a dispute over the acquisition, characterization, and valuation of property prior to and during marriage. There was also contradictory evidence as to the amount of labor expended by the parties to improve property.

Prior to marriage, appellant and respondent logged what was called the West Valley property, netting approximately $30,000, and built a barn/shop on the farm property. At the

time of marriage, respondent had substantial separate property holdings, while appellant had virtually no assets. Respondent's separate property holdings included: (1) 30 acres of farm property with a mobile home located thereupon; (2) 30 acres of West Valley property; (3) 11 acres of Arcadia property; (4) 4 horses; and (5) logging equipment and motor vehicles.

During their marriage, the parties maintained a joint checking account and basically spent what they earned. Respondent worked for the family business, Lindsey Brothers Excavating, Inc. Appellant was a homemaker, taking care of the children, horses, and farm. She did work a year for Lindsey Brothers, averaging $500 a month. Respondent had a gross income of over $45,000 in 1980 and $28,500 in 1981. In 1982, he earned $1,000, due to a slump in the excavating business, and had to borrow over $25,000 from his mother, brother, and the company.

The parties also acquired and home bred horses. Some horses were trained for the racing circuit. In 1979, the parties began construction of a family home on the farm property borrowing money from respondent's mother ($20,000), the family business ($23,000), and a bank ($70,000). In June 1981, a fire destroyed the barn/shop on the farm property. Insurance proceeds totaled $85,587.37.

The trial court in characterizing respondent's property prior to marriage utilized the *Creasman* presumption:

> In regard to the [respondent's] separate property and property acquired during the meretricious relationship, the parties are presumed as a matter of law to have intended to deal with their property as they in fact did.

*See Creasman v. Boyle,* 31 Wn.2d at 356. The major assets were found to be "either separate property of [respondent], or property acquired with separate funds . . . or loans". Respondent was awarded all of the real property.

The community property assets were then determined and "equitably" divided. Appellant principally received her personal effects, $1,700 car insurance proceeds, four horses (Any Special Times, Miss Dyna Chick, Three Bar Taylor,

and High Times Lady), a GMC pickup, and a $3,750 cash award for community labor on the family residence. No account was taken by the trial court of any contribution appellant may have made to the construction of the barn/ shop.

In addition to the real property award, respondent received the stock in his family business, personal effects, 16 horses (including the racehorse Watch Me Mama), and $1,700 car insurance proceeds.

This appeal allows us once again to reconsider the legal vitality of the *Creasman* presumption. In *Creasman v. Boyle, supra* at 351, we declared:

> [P]roperty acquired by a man and a woman not married to each other, but living together as husband and wife, is not community property, and, *in the absence of some trust relation,* belongs to the one in whose name the legal title to the property stands.

We further stated what has been identified as the *Creasman* presumption:

> [W]e think that, under these circumstances and in the absence of any evidence to the contrary, it should be presumed *as a matter of law* that the parties intended to dispose of the property exactly as they did dispose of it.

*Creasman v. Boyle, supra* at 356. "This presumption has caused considerable difficulty in subsequent litigation, and has been criticized both by the courts, and the legal writers, but has not been expressly overruled." (Footnotes omitted.) W. McClanahan, *Community Property Law* § 5:26, at 315– 16 (1982). *See* Annot., *Property Rights Arising From Relationship of Couple Cohabiting Without Marriage,* 3 A.L.R.4th 13 (1981); Washington State Bar Ass'n, *Community Property Deskbook* § 2.6 (1977).

In application, the *Creasman* presumption has been restricted to its own particular facts—one party dead and the other silenced by the deadman's statute, RCW 5.60.030. *West v. Knowles,* 50 Wn.2d 311, 313, 311 P.2d 689 (1957). *Creasman* involved the 7–year meretricious relationship of a black man, Harvey Creasman, and a white woman, Caro-

line Paul, which terminated by the death of Paul in 1946. During their relationship, Creasman worked in a naval shipyard and earned over $13,000. Paul handled all the financial matters. At her death, most of the property was in Paul's name, although a substantial portion was attributable to Creasman's salary.

The trial court awarded Creasman an undivided one–half interest in the property and a like one–half interest to the decedent's administrator. On appeal, the decision was reversed.

The *Creasman* court found "[t]he evidence points indubitably to the conclusion that, at the time of the death of Mrs. Paul, the property stood as the parties intended to place it and have it stand." *Creasman v. Boyle, supra* at 353. Moreover, there was "no ground or reason for invoking any equitable theory of resulting trust". *Creasman v. Boyle, supra* at 356.

Later decisions have attacked the presumption. In *West v. Knowles, supra* at 316, Justice Finley, concurring specially, stated:

> The rule often operates to the great advantage of the cunning and the shrewd, who wind up with possession of the property, or title to it in their names, at the end of a so–called meretricious relationship.

Although not passing on the issue in *In re Estate of Thornton,* 81 Wn.2d 72, 79, 499 P.2d 864 (1972), Justice Finley, writing for the majority, noted, "[a]rguably, *Creasman* should be overruled and its archaic presumption invalidated."

In practice, the *Creasman* presumption has been avoided through various exceptions which "characterize the property relationship between the parties in a non–marital cohabitation situation." *Community Property Deskbook* § 2.7, at 2–8. The most common means of avoidance include: (1) tracing source of funds (*West v. Knowles, supra*); (2) implied partnership/joint venture (*In re Estate of Thornton, supra; Latham v. Hennessey,* 87 Wn.2d 550, 554 P.2d 1057 (1976)); (3) resulting/constructive trust (*Omer v.*

*Omer,* 11 Wn. App. 386, 523 P.2d 957 (1974)); (4) cotenancy (*Shull v. Shepherd,* 63 Wn.2d 503, 387 P.2d 767 (1963)); (5) contract theory (*Dahlgren v. Blomeen,* 49 Wn.2d 47, 298 P.2d 479 (1956); *Marvin v. Marvin,* 18 Cal. 3d 660, 557 P.2d 106, 134 Cal. Rptr. 815 (1976)) (summarized from *Community Property Deskbook* §§ 2.8–2.12).

■ We find the constricting dictates of the *Creasman* presumption to have made the law unpredictable and at times onerous. While the presumption may have been justifiable in the context of the *Creasman* case, it has been expanded far beyond its intended scope. In this case we now are "presented with an appropriate set of circumstances", *Latham v. Hennessey, supra* at 555, to abandon and overrule the *Creasman* presumption and we hereby do so.

In its place we adopt the rule that courts must "examine the [meretricious] relationship and the property accumulations and make a just and equitable disposition of the property." *Latham v. Hennessey, supra* at 554. *Cf.* RCW 26.09.080. *See West v. Knowles, supra* at 320; *Poole v. Schrichte,* 39 Wn.2d 558, 569, 236 P.2d 1044 (1951). *Cf. Buckley v. Buckley,* 50 Wash. 213, 96 P. 1079 (1908).

Appellant specifically argued for the adoption of this new approach. Respondent maintained, however, this alternative approach should only be used when there "exists a long–term, stable, nonmarital family relationship." *Latham v. Hennessey, supra* at 554. Here, the parties' meretricious relationship lasted less than 2 years. Clearly, prior case law has involved more enduring relationships. *Latham v. Hennessey, supra* (15 years); *In re Estate of Thornton, supra* (17 years); *West v. Knowles, supra* (10 years); *Omer v. Omer, supra* (20 years). Additional factors also have been considered—continuous cohabitation, duration of the relationship, purpose of the relationship, and the pooling of resources and services for joint projects. *Latham v. Hennessey, supra* at 554.

In an analogous case involving loss of consortium with unmarried cohabitants, a California court has adopted a

"stable and significant" relationship test. *Butcher v. Superior Court,* 139 Cal. App. 3d 58, 70, 188 Cal. Rptr. 503 (1983).

This type of test, however, recently has been criticized as "so difficult as to be impossible in the real world of the practical." *Weaver v. G.D. Searle & Co.,* 558 F. Supp. 720, 723 (N.D. Ala. 1983).

> Would the giving of an engagement ring qualify as creating a significant relationship? If not, how long would the engagement have to exist? Would "going steady" be sufficient? Is cohabitation sufficient? If it is, how much cohabitation? Would a simple "rent sharing" do the trick? What about a "significant" and "meaningful" homosexual relationship?

*Weaver v. G.D. Searle & Co., supra.* While these criteria may be useful in determining the existence of a meretricious relationship, we do not believe they should be adopted as a rigid set of requirements but rather that courts should examine each case on its facts. In any event, in this case the existence of a meretricious relationship was not contested by either appellant or respondent and was not an issue.

Instead, respondent argued the *Creasman* presumption was irrelevant to the property distribution. Relying on *West v. Knowles,* 50 Wn.2d 311, 311 P.2d 689 (1957), respondent claimed no presumption arose because the parties' property was traceable to its owners.

*West v. Knowles* involved parties living in a meretricious relationship for 10 years. After an accounting of their property, both parties appealed the trial court's award. The *Creasman* presumption was found not to be on point as it "arises only when there is an absence of evidence as to intention." *West v. Knowles, supra* at 313. The court found no absence of evidence as to the parties' intentions

> because both parties testified *in extenso* regarding their properties. None of the property ever lost its character as separate property, notwithstanding the mingling thereof, the resulting confusion, and the difficulty of separating it. No presumptions arise as to property which can be

traced to one or the other. It belongs to the original owner . . .

*West v. Knowles, supra* at 313. Both appellant and respondent were able to present extensive evidence and exhibits to support their positions.

The principal assets were respondent's separate real property, a number of horses, and the fire insurance proceeds. The real property was owned by the respondent before marriage and properly characterized as separate property. RCW 26.16.010. We also hold the trial court properly exercised its statutory discretion (RCW 26.09.080) in the distribution of the other assets, including the horses.

The fire insurance proceeds, however, are more difficult to characterize. Generally, such "proceeds stand in the place and stead of property insured and partake of the same character . . ." *In re Estate of Hickman,* 41 Wn.2d 519, 523, 250 P.2d 524 (1952). The property insured was a barn/shop that had been constructed prior to marriage. Appellant was awarded *no* property interest in the barn/shop, which subsequently burned and netted $85,587.37 in insurance payments.

The record reveals the building was used as a working shop, to store company and personal tools/supplies, and as a tack room. The excavating company's insurance paid $50,000 for the consumed structure, $15,000 for shop tools, and $5,000 for personal property. An additional $15,587.37 was paid under the homeowner's policy of the couple.

Respondent contended that he built the barn/shop himself and appellant "did very little work." Appellant maintained she helped in framing, cementing, siding, and roofing the barn/shop. Additionally, she stated she did almost all the painting.

The trial court characterized the barn/shop and its subsequent proceeds as respondent's separate property because the barn was constructed prior to marriage. The trial court also relied on the *Creasman* presumption as the property upon which the barn/shop was built was in respondent's name. Hence, no evaluation of appellant's premarriage

interest in the barn/shop was made.

Under the "just and equitable" approach we hold the trial court must consider whatever property interest appellant may have in the barn/shop. We recognize the trial court's discretion is wide and will not be interfered with except for a manifest abuse of such discretion. *Baker v. Baker*, 80 Wn.2d 736, 747, 498 P.2d 315 (1972). The fact that appellant's interest in the barn/shop was not evaluated rises to this level of error.

The case is remanded to the trial court for a determination, in accordance with the law set forth in this case, of what interest, if any, Lana Lindsey has in the barn/shop. We find the remaining property to have been justly and equitably determined and distributed in accordance with the rule announced herein and with the statute, RCW 26.09.080. Appellant's request for attorney fees is denied.

WILLIAMS, C.J., ROSELLINI, UTTER, BRACHTENBACH, DORE, DIMMICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.