# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In re: | No. 49436-1-II |
| DONALD MURIDAN, | |
| Appellant, | |
| v. | PUBLISHED OPINION |
| NICOLE MARIE REDL, | |
| Respondent. | |

MELNICK, J. — Over the course of a relationship that lasted over six years, Donald Muridan and Nicole Redl lived together, had a child together, and were engaged to be married. The trial court found that the parties had a committed intimate relationship (CIR) and, after the relationship ended, classified certain assets acquired during the relationship as community-like property subject to a 50/50 equitable division between the parties.

On appeal, Muridan argues that he and Redl did not have a CIR. In the alternative, Muridan argues that even if a CIR existed, it ended prior to Muridan's August 2014 acquisition of the most valuable asset at issue, a 25 percent ownership interest in a retail marijuana business.

Applying the five-factor test found in *Connell v. Francisco*, 127 Wn.2d 339, 898 P.2d 831 (1995), we conclude that the trial court properly decided that the parties entered into a CIR. In addition, we hold that substantial evidence supports the trial court's finding that the CIR lasted from approximately December 2008 to February 2015. Finally, we conclude that the trial court did not abuse its discretion in characterizing or dividing the parties' assets. We affirm.

FACTS

I.  MURIDAN AND REDL'S RELATIONSHIP

A.  Overview

In April or May of 2008, Muridan and Redl met online and began a dating relationship. In either December 2008 or January 2009, Redl moved into Muridan's North Tacoma home. In December 2009, Redl became pregnant with the parties' only child, D.M. In December 2010, after D.M.'s birth, the parties became engaged. Although the parties never married, they continuously cohabitated and shared parenting responsibilities for D.M. until Muridan ended their relationship on February 27, 2015.

B.  Muridan Diagnosed with Cancer

In February 2009, Muridan received a prostate cancer diagnosis. In order to obtain health insurance for Muridan through Redl's employer, the parties signed an affidavit of domestic partnership.[1] Muridan obtained insurance and received cancer-related treatment for the remainder of the parties' relationship. Redl and D.M. often accompanied Muridan to his treatments. In 2011, Muridan's prostate surgeries rendered him impotent.

C.  Parties' Financial Relationship

When the parties met, Muridan had part ownership of a fencing installation company and earned $120,000 per year. Redl was a teacher and earned $67,132 per year. The parties had separate retirement accounts, and Muridan owned the North Tacoma home subject to a mortgage.

---

[1] State Registered Domestic Partnerships are governed by chapter 26.60 RCW. "It is the intent of the legislature that for all purposes under state law, state registered domestic partners shall be treated the same as married spouses." RCW 26.60.015.

For the first eight months of cohabitation, Redl paid Muridan $800 per month in rent. After eight months, the parties orally agreed that Redl would no longer pay rent, but she paid the cable bill and, after D.M. was born, 100 percent of daycare expenses for the first 24 months. Redl also paid both parties' medical insurance. Both parties contributed to groceries. Muridan paid the mortgage, utilities, and daycare expenses for the next 24 months. He also paid for D.M.'s food, clothing, extra-curricular and vacation expenses. In addition, Muridan bought a car for Redl's use; Redl paid the car insurance. The parties' financial arrangements were based on oral agreements.

After D.M.'s birth, Muridan added Redl as a beneficiary to both his life insurance policy and in his will. In 2013, prior to filing individually for bankruptcy, Muridan gave Redl $20,000 in cash "to hold for him." Br. of Appellant at 11. Redl later returned $5,000 to him. The parties also shared a joint bank account. In September 2014, Muridan opened a joint Key Bank checking account. The parties also had a joint safety deposit box at Key Bank.

D. Other Relevant Events

After attending couples counseling together in 2012, the parties decided to have another child using in vitro fertilization (IVF). The parties attempted IVF treatments in 2012, and again in 2013. The treatments were unsuccessful.

In March of 2014, Redl met John Sidell. Redl and Sidell began a clandestine sexual relationship; however, Redl remained in a relationship with Muridan. In November, Muridan posted on Facebook that Redl was "the love of my life." Report of Proceedings (RP) (July 6, 2016) at 285. In December, Muridan learned of Redl's involvement with Sidell. Muridan and Redl did not immediately end their relationship. Both parties indicated their desire to stay together for the sake of D.M.

3

In the next two months, Muridan, asked his lawyer to add Redl to the title on his house, and presented Redl with expensive gifts and a Valentine's Day vacation to Palm Springs.

On February 26 or 27, 2015, Muridan read a letter from Redl's doctor informing her that she was pregnant. Muridan correctly guessed that Sidell was the father. Redl moved out of Muridan's North Tacoma home, gave birth, and married Sidell.

E.     Property at Issue

This case focuses on three assets that Muridan claims are solely his separate property. First, a $50,000 note for the sale of marijuana equipment; second, Muridan's partial ownership interest in a marijuana company, Rainier on Pine; and third, a Timberland Bank account with a balance of $25,000.

1.     Marijuana Equipment Sale

In 2011, Muridan closed his fencing company and opened a medical marijuana dispensary. It operated from the spring of 2011 until May 2014. In 2013, Muridan sold equipment purchased for the dispensary for $50,000. Muridan held a $50,000 note from the sale.

2.     Rainier on Pine

In August 2014, after the dispensary closed, Muridan acquired a 25 percent ownership interest in the Rainier on Pine retail marijuana business. Shortly thereafter, Muridan became embroiled in a legal dispute with his co-owner. In October 2015, the parties executed a buyout in the form of a settlement contract. In order to extinguish Muridan's interest in Rainier on Pine, his co-owner agreed to pay Muridan $700,000.

             3.       Timberland Bank Account

Muridan held multiple bank accounts during his relationship with Redl. Muridan had one account, in his name only, at Timberland Bank. It had a balance of $25,000 when the relationship ended. The trial court divided the Timberland Bank account in half.

## II.     PIERCE COUNTY SUPERIOR COURT PROCEEDINGS

The trial court held a hearing and found that, between December 2008 and February 27, 2015, the parties were in a CIR.[2] The court explained its reasoning:

> The court finds that the parties were indeed in an equitable/committed intimate relationship based on the following factors: The parties continuously cohabitated together for at least a period of seven years,[3] which is evidenced by the conceiving and birthing of a child, two attempts at artificial insemination, living together, holding themselves out to the world to be a family, and the pooling of their resources.

Clerk's Papers (CP) at 22. Because the trial court found that the parties had a CIR, it treated assets acquired during the relationship as community-like property. The court classified the following assets as community-like property:

1. Rainier on Pine Marijuana Business sold for $700,000 on 10/29/15.

2. Timberland Bank Account with balance of $25,000 as of date of separation.

3. Marijuana Equipment valued at $50,000.

---

[2] The trial court used the term "dissolution" in reference to judicial proceedings surrounding the termination of the parties' CIR. CP at 23. Because the parties were not married, the legal term "dissolution" is inapplicable. Ch. 26.09 RCW. Instead, we use the word "termination" to refer to the end of a CIR. Similarly, the trial court referred to the property acquired during the CIR as "quasi-community" property. CP at 19. However, "quasi-community" property is a preexisting term defined by statute. RCW 26.16.220. This term should not be used in CIR cases. *See Soltero v. Wimer*, 159 Wn.2d 428, 430 n.1, 150 P.3d 552 (2007). Instead, we use the term "community-like" property.

[3] Although the court said seven years, the actual period was just over six years based on its other findings. This discrepancy does not affect our analysis or the result we reach.

CP at 19. The trial court concluded that a 50/50 division was "just and equitable." CP at 20. Accordingly, the trial court allocated half of each asset listed above to Redl and ordered Muridan to pay Redl. In total, the trial court awarded $387,500 to Redl. Muridan appeals.

ANALYSIS

Muridan argues that the trial court erroneously classified the parties' relationship as a CIR. He also argues if a CIR existed, the trial court erred by ruling it ended on February 27, 2015 and not in August 2014. As a result, Muridan asserts that the trial court improperly distributed certain community-like property assets, which Muridan argues should be classified as separate property not subject to equitable division. We disagree.

I. STANDARD OF REVIEW

We review a trial court's division of property following a CIR for abuse of discretion. *Byerley v. Cail*, 183 Wn. App. 677, 684-85, 334 P.3d 108 (2014). "A trial court abuses its discretion if its decision is manifestly unreasonable, adopts a position no reasonable judge would take, is "based on untenable grounds," or if the judge misapplied the law. *In re Matter of L.H.*, 198 Wn. App. 190, 194, 391 P.3d 490 (2016).

We review the trial court's underlying conclusion that the parties' relationship was a CIR de novo. *In re Marriage of Pennington*, 142 Wn.2d 592, 603, 14 P.3d 764 (2000). Whether the parties had a CIR presents a mixed question of law and fact. *Pennington*, 142 Wn.2d at 602-03. Although we defer to the trial court's unchallenged findings of fact, as well as challenged findings supported by substantial evidence, we review de novo whether the trial court's legal conclusions properly follow from those findings. *Pennington*, 142 Wn.2d at 602-03. With respect to challenged factual findings, evidence is "substantial" if it would persuade a rational, fair-minded person of the finding's truth. *In re Marriage of Fahey*, 164 Wn. App. 42, 55, 262 P.3d 128 (2011).

In our review, we neither weigh the evidence nor judge the credibility of the witnesses. *In re Marriage of Greene*, 97 Wn. App. 708, 714, 986 P.2d 144 (1999).

II.     PROPERTY DISTRIBUTION FOLLOWING TERMINATION OF CIR

Washington courts recognize that two individuals in a CIR may both have an interest in property acquired during the relationship. *Byerley*, 183 Wn. App at 685-86. Following the termination of a CIR, courts may equitably divide property in a manner similar to marriage dissolution proceedings. *Connell*, 127 Wn.2d at 351. A CIR is a "stable, marital-like relationship where both parties cohabit with knowledge that a lawful marriage between them does not exist." *Connell*, 127 Wn.2d at 346. The CIR, based on equitable principles, protects the interests of unmarried parties who acquire property during their relationships by preventing the unjust enrichment of one at the expense of the other when the relationship ends. *Pennington*, 142 Wn.2d at 602.

*Connell* established several nonexclusive factors for courts to consider when determining whether the parties had a CIR. 127 Wn.2d at 346. They are: (1) continuity of cohabitation, (2) "duration of the relationship," (3) "purpose of the relationship," (4) "pooling of resources and services for joint projects," and (5) "the intent of the parties." *Connell*, 127 Wn.2d at 346; *see also Pennington*, 142 Wn.2d at 601-05. Courts should not apply these factors in a hypertechnical fashion, but must base the determination on the circumstances of each case. *Pennington*, 142 Wn.2d at 602. The weight to be given to each factor has not been established, nor has how to balance one factor against any other factor or factors. In particular, determining the duration of such relationships is often a challenge. Kenneth W. Weber, 21 WASHINGTON PRACTICE: FAMILY AND COMMUNITY PROPERTY LAW § 57.8, at 396-402 (1997).

Upon determining that a CIR existed, courts may distribute property acquired during the relationship that would be treated as community property were the parties legally married. *Connell*, 127 Wn.2d at 351.[4]  Property acquired during a CIR is presumed to be community-like. *Pennington*, 142 Wn.2d at 602; *see also In re Estate of Borghi*, 167 Wn.2d 480, 483-84, 219 P.3d 932 (2009).  This presumption may be rebutted if the distribution would, at the end of the relationship, unjustly enrich one party at the expense of the other.  *Pennington*, 142 Wn.2d at 602.

Our analysis proceeds in three stages.  First, we review de novo the legal conclusion that a CIR existed.  *Pennington*, 142 Wn.2d at 602-03.  Second, if such a relationship did exist, we identify when it ended.  This review is an issue of fact.  *Pennington*, 142 Wn.2d at 603-04.  Third, we review for abuse of discretion whether the trial court's distribution of property acquired during a CIR was just and equitable.  *Pennington*, 142 Wn.2d at 602.

III.    THE PARTIES ENTERED INTO A CIR

Regarding the existence and duration of the CIR, the trial court made the following findings of fact: (1) the parties cohabitated for at least seven years, during which time they (2) conceived, gave birth to, and co-parented a child together, (3) twice attempted to have a second child via IVF, (4) held themselves out to the world as a family, and (5) pooled resources.  Based on these findings, the trial court ruled that Muridan and Redl were in a CIR from December 2008 until February 27, 2015.  On appeal, Muridan argues that the parties' relationship was not a CIR.  We disagree.

A.      Trial Court's Findings Supported by Substantial Evidence

As a threshold matter, we consider the factual findings on which the trial court's legal conclusion is based.  Reviewing courts defer to trial courts' unchallenged findings of fact, and

---

[4] Although courts look to the statutory definitions of "separate" and "community property" for guidance, marital community property laws do not apply directly to CIR dissolution proceedings. *Connell*, 127 Wn.2d at 351.

review challenged findings for substantial evidence. *Fahey*, 164 Wn. App. at 55. Evidence is "substantial" if it would persuade a rational, fair-minded person of the finding's truth. *Fahey*, 164 Wn. App. at 55.

Muridan does not challenge the trial court's cohabitation, co-parenting, and IVF findings. We accept these findings as verities. *Pennington*, 142 Wn.2d at 602–03. However, Muridan does argue that the parties neither portrayed themselves as a family nor pooled resources.[5]

First, Muridan appears to argue that the couple did not present themselves as a family despite signing an affidavit of domestic partnership because the purpose of that action was to obtain health insurance for Muridan. Muridan's argument is unpersuasive. Regardless of their underlying motives, the parties asserted under penalty of perjury that they were domestic partners. Muridan also concedes that he and Redl appeared in public as a couple on other occasions, including attending regular barbeques and cookouts together. Substantial evidence supports the trial court's finding.

Second, Muridan argues that he and Redl did not pool resources, pointing out that the parties maintained separate accounts and that each party paid bills throughout the relationship. This argument also fails. Pointing to individual assets that the parties kept separate does not refute the trial court's finding that pooling occurred. The trial court did not find that the parties pooled all resources. The record contains substantial evidence, unrefuted by Muridan, to support the finding that Muridan and Redl pooled at least some of their resources. They shared daycare expenses, they both contributed to groceries, and they maintained a joint checking account. Before

---

[5] Muridan's challenge to these two findings of fact is implied by his overall argument challenging the trial court's CIR conclusion. Because Muridan does not explicitly assign error to the trial court's findings of fact, they are verities on appeal. *Pennington*, 142 Wn.2d at 602–03. To the extent Muridan does challenge these findings, they are supported by substantial evidence.

declaring bankruptcy, Muridan asked Redl to hold onto $20,000 of his cash. This evidence would persuade a rational, fair-minded person that some pooling of resources did occur. *Fahey*, 164 Wn. App. at 55. The court's finding is supported by substantial evidence.

B.    *Connell* Factors

Next, we review de novo the trial court's legal conclusion that a CIR existed. Like the trial court, we utilize the nonexclusive *Connell* factors and reach a determination based on the circumstances of this case. *Connell*, 127 Wn.2d at 346.[6]

As discussed above, Muridan does not assign error to the court's CIR-related findings of fact but challenges some in his briefing. To the extent that Muridan assigns error to the trial court's CIR finding as well as the court's underlying findings of fact, we summarize the supporting evidence and conduct a *Connell* analysis.

1.    Factor 1: Continuous Cohabitation

The court found that the parties cohabitated for over six years. Muridan does not contest this finding. The record shows that the parties lived together continuously from at least January 2009 to February 2015 without any periods of separation or sporadic cohabitation. *Pennington*, 142 Wn.2d at 603. On these facts, the parties had a "stable cohabiting relationship." *Pennington*, 142 Wn.2d at 603. This factor favors that a CIR existed.

2.    Factor 2: Duration of the Relationship

The court found that the parties were together for approximately seven years. Muridan does not contest this finding. The record shows that the parties were in a dating relationship for

---

[6] We note that it is unclear whether our review reaches the underlying evidence or is limited to considering whether the trial court correctly applied the law to its findings of fact. *Pennington*, 142 Wn.2d at 603-04. The record shows the trial court did consider the *Connell* factors in its analysis.

about two years before living together as a couple for a total of over six years. "While a 'long term' relationship is not a threshold requirement, duration is a significant factor." *Connell*, 127 Wn.2d at 346 (quoting *In re Marriage of Lindsey*, 101 Wn.2d 299, 305, 678 P.2d 328 (1984)). Here, the duration factor favors that a CIR existed.

3.    Factor 3: Purpose of the Relationship

The court found that the purpose of the parties' relationship was companionship, support, and to create a family. The parties supported each other as co-parents. They lived together and raised a young child. They gave birth to one child and twice attempted to have a second child. Redl provided emotional support to Muridan through his years of cancer treatment. Moreover, the parties presented themselves to the world as a family by living together as a couple, attending events together, and asserting in writing that they were domestic partners.

Muridan argues the relationship was more transactional. However, the possibility that the parties' relationship also served other purposes like saving on rent payments in Redl's case, or providing health insurance for Muridan, does not nullify or diminish the purposes discussed above. The fact that multiple purposes for the relationship exists does not change the characterization. *Pennington*, 142 Wn.2d at 604. This factor strongly favors that a CIR existed.

4.    Factor 4: Pooling of Resources

The court found that the parties pooled resources. As discussed above, both parties contributed time, energy, and resources to the relationship and to raising their son. Muridan paid for housing and utilities; Redl paid for health insurance and cable. Both parties contributed to

11

groceries and daycare expenses. Furthermore, evidence exists of explicit comingling of funds. Muridan argues that the parties did not pool resources. Although both parties kept at least some aspects of their finances separate, they also pooled many of their finances. This factor favors that a CIR existed.

          5.      Factor 5: Intent of the Parties

The court found that the parties intended to live together as a family. They continuously cohabitated as a couple for over six years. They executed an affidavit of domestic partnership. That means they "shall be treated the same as married spouses." RCW 26.60.015. They chose to raise a child together. When their relationship began to have problems, they remained sufficiently committed to seek couples counseling, and actively attempted to have a second child together as late as 2013. The lack of sexual activity does not show that the parties did not intend to form a CIR. As the trial court correctly observed, a couple can be "quite intimate and on the level of marriage [despite] not necessarily hav[ing] a sexual relationship." RP (July 11, 2016) at 4.

Muridan argues Redl's affair suggests her intent was to end the CIR. In this case, Redl met Sidell in March 2014, the two began a sexual relationship the following month, and she became pregnant in 2015. Evidence of infidelity weighs against a court's determination that the unfaithful party intended to form a CIR, but is not solely determinative. *See Pennington*, 142 Wn.2d at 604; *Long v. Fregeau*, 158 Wn. App. 919, 926, 244 P.3d 26 (2010).

Muridan and Redl intended to enter into a CIR. Prior to May of 2014, this factor strongly favors that a CIR existed. After May 2014, this factor continues to modestly favor a CIR. Infidelity alone does not preclude a CIR. *Long*, 158 Wn. App. at 926. Furthermore, with respect to the intent factor, the weight of the infidelity evidence is partially counterbalanced by the fact that both parties chose to remain together even after Muridan learned of the affair.

6.      Conclusion

We conclude that the *Connell* factors support a determination that Redl and Muridan had a CIR.

C.      Muridan Misunderstands the Legal Requirements of a CIR

Muridan argues that the parties were not intimate with each other, nor were they committed to the relationship, and therefore could not be in a CIR. Muridan's intimacy argument focuses on physical intimacy, noting that Muridan's medical condition removed sex from the parties' relationship after 2011. With respect to commitment, Muridan argues that Redl's affair demonstrates that she was not committed to the relationship. By the summer of 2014, Muridan argues, both parties "wanted out," and only stayed in the relationship for the benefit of their son. Reply Br. of Appellant at 9. Muridan's arguments communicate an overly literal and simplistic characterization of Washington's CIR case law.

First, Muridan's emphasis on the couple's lack of physical intimacy is unpersuasive. The word "intimate" in the term "committed intimate relationship" was not intended to make *sexual* intimacy the litmus test for whether courts should equitably divide property at the end of the relationship. *Long*, 158 Wn. App. at 922. Sex is not a threshold requirement for intimacy. *Long*, 158 Wn. App. at 922. While courts may consider physical intimacy within the *Connell* framework, it is not required. *Long*, 158 Wn. App. at 922.

Second, the word "committed" does not mean that infidelity triggers the end of a CIR. As *Long* said, "[i]ntimacy and commitment are just two non-exclusive relevant factors a trial court can consider in deciding if equity applies to support an equitable property division." 158 Wn. App. at 922. In *Long*, that court concluded that the factors in favor of a CIR, including cohabitation, joint planning for the future, and holding themselves out as a couple, outweighed

those against, which included physical absences and multiple instances of infidelity. 158 Wn. App. at 927. Similarly, while Redl's relationship with Sidell adds some credence to Muridan's arguments against a CIR, it is outweighed by what both parties chose to do once it came to light. They remained a couple, continued to live together, and co-parented their son.

Muridan's characterization of a CIR's requirements overlooks its underlying equitable foundation. The descriptors "committed" and "intimate," and by extension the *Connell* factors themselves, are simply the tools that courts use to better consider the equities that encompass a CIR analysis. "We have never divorced the [CIR] doctrine from its equitable underpinnings." *Pennington,* 142 Wn.2d at 602. The bottom line is that when a CIR is terminated, no one party should be unjustly enriched. The issue we must decide is whether fairness and equity requires a division of assets at the end of a CIR. Like the trial court, we agree that it does.

IV.    THE TRIAL COURT CORRECTLY FOUND THE CIR ENDED IN FEBRUARY 2015

Muridan argues that even if a CIR once existed, it ended prior to August 2014 when he acquired an ownership interest in Rainer on Pine. We disagree.

The parties cohabitated for over six years, during which time they raised a child together and lived as a family. They lived together as a couple until Muridan ended the relationship in February 2015. It is uncontested that Muridan ended the relationship on February 27, 2015, when he learned of Redl's pregnancy. The trial court's finding that the relationship ended on that date is therefore an unchallenged finding of fact and a verity on appeal.[7]

---

[7] To the extent Muridan argues that the trial court's termination finding is instead a conclusion of law, the result is the same. The legal conclusion that a CIR no longer existed after February 2015 is supported by the court's findings of fact, which in turn are supported by substantial evidence. The trial court did not err.

V.    THE TRIAL COURT CORRECTLY CLASSIFIED PROPERTY ACQUIRED DURING THE PARTIES'
      CIR AS COMMUNITY-LIKE PROPERTY

Based on its finding that the parties were in a CIR from December 2008 to February 2015, the trial court classified three assets acquired during the relationship as community-like property. First, a $50,000 note for the sale of marijuana equipment; second, Muridan's partial ownership interest in Rainier on Pine; and third, a Timberland Bank account with a $25,000 balance. Because the trial court's classification of property is part of equitable property division, we review it for abuse of discretion. *Byerley*, 183 Wn. App. at 684-85.

Property and income acquired during a CIR is presumed to be community-like property. *Connell*, 127 Wn.2d at 351. This presumption can be rebutted by showing that one party acquired the property by "gift, bequest, devise, or descent with the rents, [including the] issues and profits thereof." *Connell*, 127 Wn.2d at 351.

In this case, Muridan offers no credible arguments why the $50,000 note and Timberland Bank account should be classified as his separate property. Muridan acquired the note from a sale of marijuana equipment in 2013 while the CIR existed. Similarly, the record indicates that Muridan funded his bank accounts from income earned during the CIR. Muridan provides no evidence to the contrary. Applying *Connell*'s joint ownership presumption, the trial court did not abuse its discretion in classifying the note and Timberland Bank account as community-like property.

Muridan's argument focuses on the buyout agreement for his interest in Rainier on Pine, valued by the trial court at $700,000. First, Muridan argues the asset is not community-like property because the CIR was over by the time he acquired it. Second, Muridan argues the asset

15

is not community-like property because he did not execute the agreement until October 2015, well after the end of the relationship. Muridan's arguments fail to rebut the community-like property presumption.

We have already addressed that contrary to Muridan's argument, the CIR terminated on February 27, 2015. Muridan's argument that this asset is not community-like property because he executed the agreement in October 2015 is also unpersuasive. The "property" in question is not the agreement itself, but the underlying ownership interest in Rainier on Pine. Because Muridan acquired his stake in Rainier on Pine in August 2014, before the CIR terminated, the trial court did not abuse its discretion in classifying the property as community-like property. *See Pennington*, 142 Wn.2d at 602.

## VI. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION WITH A 50/50 DIVISION OF ASSETS

The trial court concluded that a 50/50 division of the contested assets was "just and equitable" based on the "nature and extent of the relationship," "length of relationship," and "economic circumstances of the parties." CP at 20. Muridan argues that the trial court erred by improperly valuing his interest in Rainier on Pine and abused its discretion by failing to consider the economic circumstances of the parties. Again, we disagree.

Muridan argues for the first time on appeal that the trial court improperly valued his $700,000 Rainier on Pine interest. Property valuation is a material fact reviewed for substantial evidence. *In re Marriage of Rockwell*, 141 Wn. App. 235, 243, 170 P.3d 572 (2007). Muridan points out that as part of the sale, he retained responsibility for up to $75,000 in tax liability. We do not consider Muridan's tax liability argument for two reasons. First, Muridan provides no evidence as to what an allegedly more accurate valuation would be. Second, the tax proceeding is outside the record and apparently remains unresolved. We have no basis on which to judge what

16

impact, if any, that proceeding would have on the value of this asset. The trial court's valuation of $700,000 was based on substantial evidence—that of the $700,000 sale price set by the Rainier on Pine contract agreement itself.

Muridan's economic circumstances argument is similarly unpersuasive. Contrary to Muridan's assertion, the trial court did explicitly consider the parties' economic circumstances. Muridan cites no authority to support his assertion that Washington law requires the order itself to contain more than the "pro forma statement" quoted above. Br. of Appellant at 47. In either event, consideration of the parties' individual circumstances is evident throughout the record.

Based on these considerations, the trial court determined that equity and fairness required an equal division of the community-like assets. As the trial court explained, the 50/50 division was just and equitable in light of "Redl's contribution in the form of time and energy in co-parenting the child and meeting the financial needs of the family through payment of health insurance premium, the cable bill and 100% of the daycare expenses for 24 months." CP at 24. On this basis, the trial court's equitable division is not manifestly unreasonable or an abuse of discretion.

VII.    ATTORNEY FEES

Arguing that Muridan's appeal is frivolous, Redl requests attorney fees under RAP 18.9. An appeal is not frivolous if it raises even one debatable issue "upon which reasonable minds might differ." *Advocates for Responsible Dev. v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 170 Wn.2d 577, 580, 245 P.3d 764 (2010). Because Muridan's appeal is not frivolous, we decline to award attorney fees to Redl.

We affirm the trial court.

Melnick, J.

We concur:

Johanson, J.

Maxa, A.C.J.