IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No. 36577-8-III |
| MARIE LOUISE MANEAU | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| MARCUS JAMES MANEAU, | ) | |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Marcus Maneau appeals the judgment entered following the dissolution of his marriage to respondent Marie Maneau. We affirm the decree, but deny respondent's request for attorney fees.

FACTS

The couple began dating in 1976 and began living together in New Orleans in 1977. He had served in the U.S. Army between 1970 and 1973, and then began working for Kaiser Aluminum in Louisiana. A Kaiser job opening led Mr. Maneau to transfer to Spokane in 1987; respondent followed him less than one year later. He bought a house in Spokane in 1991 and paid it off in 2003 when he retired. The house was listed solely in Mr. Maneau's name.

While the couple had no children together, Mr. Maneau assisted with raising Ms. Maneau's two children. The couple shared income, split household bills, travelled together, and shared life experiences. Ms. Maneau paid for a new roof on their house out of her retirement fund, while Mr. Maneau painted the house. They held themselves out to the community as a couple and believed they would live together forever.

The couple married in 2000. In 2010, Ms. Maneau's daughter passed away after giving birth to a severely disabled child, J.M. The couple adopted J.M., whose disabilities require constant medical care and supervision. Ms. Maneau retired from work in 2014. In 2016, Mr. Maneau experienced a stroke that affects his ability to speak. His behavior changed and Ms. Maneau became concerned that he could not provide appropriate care for J.M.

After Ms. Maneau filed a petition to dissolve the marriage in 2017, both sides retained counsel. However, Mr. Maneau discharged his counsel and represented himself at trial, apparently due to disagreements with his attorney. A significant focus of the trial involved identifying the proper custodian for J.M. Mr. Maneau also argued that he should receive the house or a financial share from the property.

The court determined Mr. Maneau received monthly income from social security, Veteran's Affairs (VA) disability, and a Kaiser pension. Ms. Maneau received her own monthly social security. As J.M.'s primary caretaker, Ms. Maneau received adoption

support and a separate social security income meant for J.M.'s care. Ms. Maneau's total monthly income constituted about one-fifth of Mr. Maneau's monthly income.

The court awarded Ms. Maneau custody of J.M. with several weekly visits for Mr. Maneau. Mr. Maneau was ordered to pay child support and spousal support.[1] The court awarded Ms. Maneau the house to care for J.M. and divided household goods and bank accounts between the couple, taking note of separate property from inheritances. Mr. Maneau was ordered to pay half of Ms. Maneau's attorney fees.

ANALYSIS

This appeal raises six arguments, which we address as five issues in the following order: (1) existence of a committed intimate relationship, (2) property distribution and award of the house, (3) possible child support offset, (4) spousal support award, and (5) attorney fee award.[2]

---

[1] The spousal support order ends with the death of J.M.

[2] Mr. Maneau asks that we consider this appeal with an understanding that his stroke could have inhibited his trial performance. A pro se litigant normally is held to the same standard as an attorney. *Carver v. State*, 147 Wn. App. 567, 575, 197 P.3d 678 (2008). This standard may not apply to a pro se litigant who is suffering from a known mental disability. *Id*. If one is incompetent, an appointed guardian may bring legal actions on the incompetent individual's behalf. RCW 11.92.060. If there is expert opinion that Mr. Maneau was not competent at trial, a guardian could seek relief from judgment for a person of unsound mind. CR 60(b)(2). This issue is not before us in this appeal and we do not further opine whether such a motion might succeed. Although we have no expert testimony suggesting that he was incompetent at trial, we have liberally considered his trial arguments to avoid waiver of his appellate arguments.

*Committed Intimate Relationship*

A committed intimate relationship exists when a couple intentionally cohabites in a stable, marital-like relationship, but without a lawful marriage. *Connell v. Francisco*, 127 Wn.2d 339, 346, 898 P.2d 831 (1995). We review the trial court's determination that such a relationship existed for abuse of discretion. *In re Long and Fregeau*, 158 Wn. App. 919, 928, 244 P.3d 26 (2010). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

The circumstances a court may consider when making a committed intimate relationship finding include, but are not limited to: "continuous cohabitation, duration of the relationship, purpose of the relationship, pooling of resources and services for joint projects, and the intent of the parties." *In re Marriage of Pennington*, 142 Wn.2d 592, 603, 14 P.3d 764 (2000). Continuous cohabitation does not mean uninterrupted, but usually requires the parties consistently live with each other without other partners. *Id.* Maneau stresses that some financial matters were kept separate, but the committed intimate relationship finding requires a comprehensive review of the entire relationship rather than just one element. During their 40 years together, they consistently lived with each other as a married couple. They jointly paid household bills and raised the children. A witness testified that the couple appeared as husband and wife to others.

4

The trial court properly examined the party's conduct during the approximately 22 years spent together before marriage. The evidence supports the trial court's finding that a committed intimate relationship existed before the marriage.

*Property Distribution and Award of the House*

Mr. Maneau challenges the characterization of the house and the ensuing property distribution. The trial court wrestled with a difficult decision and did not abuse its discretion.

All property is before the court for distribution in dissolution proceedings and the trial court must characterize the property as community or separate. *Brewer v. Brewer*, 137 Wn.2d 756, 766, 976 P.2d 102 (1999); *Baker v. Baker*, 80 Wn.2d 736, 745, 498 P.2d 315 (1972). We review property characterization rulings de novo. *In re Marriage of Chumbley*, 150 Wn.2d 1, 5, 74 P.3d 129 (2003). Similar standards are applied to characterize property from a committed intimate relationship. *In re Marriage of Lindsey*, 101 Wn.2d 299, 304-306, 678 P.2d 328 (1984). This division of property must be just and equitable. *Id*. at 304. Once the trial court makes a determination that a committed intimate relationship exists, it then (1) evaluates the interest each party has in the property acquired during the relationship, and (2) distributes the property in a just and equitable manner. *Id*.

The distribution does not have to be equal. *Washburn v. Washburn*, 101 Wn.2d 168, 179, 677 P.2d 152 (1984). After a long term marriage (over 25 years), the court's

5

primary goal is to establish equal financial footing for both individuals for the rest of their lives. *In re Marriage of Doneen*, 197 Wn. App. 941, 949, 391 P.3d 594 (2017). We review the distribution for abuse of discretion. *In re Marriage of Rockwell*, 141 Wn. App. 235, 242-244, 170 P.3d 572 (2007).

Various presumptions aid courts in determining whether property is community or separate. *In re Estate of Borghi*, 167 Wn.2d 480, 483-484, 219 P.3d 932 (2009). The date of acquisition is the primary determinant. *Id.* at 484. Once the characterization is made, the property presumptively retains that character until such time as it has been overcome with evidence of an intent to change that characterization. *Id*. at 484-485, 491-492. The presumption can be overcome by clear and convincing evidence. *Id*. at 484 n.4.

When property is acquired by a party during a committed intimate relationship, it also is presumptively jointly owned by both parties. *In re Estate of Langeland*, 177 Wn. App. 315, 324-325, 312 P.3d 657 (2013). This presumption can be overcome by clear and convincing evidence showing the separate nature of the funds used to acquire the property. *Id*. at 325. The fact that the property title only has one party's name is irrelevant to this analysis. *Connell*, 127 Wn.2d at 352.

While Mr. Maneau did not directly argue the house constituted separate property, he argued throughout trial that he paid for the house and should receive the property. We consider this sufficient to preserve the issue for appellate review. The evidence from trial establishes the house was purchased in 1991 using Mr. Maneau's income. Mr. Maneau's

income was earned during the committed intimate relationship. He used his retirement funds to pay off the mortgage in 2003. Since the pair was in a committed intimate relationship when the house was purchased, it is presumptively treated as jointly-owned regardless of the title designation. Mr. Maneau did not overcome this presumption at trial. No evidence suggested Mr. Maneau used separate funds to pay for the house.

Since it properly considered the house as community-like property, the trial court did not abuse its discretion by awarding it to Ms. Maneau. She needed the house to care for J.M. and lacked the financial means to obtain a different residence. Mr. Maneau had far greater income than Ms. Maneau. Because J.M. needed the house and Ms. Maneau was the primary caretaker, the court understandably awarded the house to her.

The award of the couple's major asset to one party necessarily skewed the property distribution. With the house going to Ms. Maneau, and few other significant assets to divide, the trial court was in a difficult position. The court made strong efforts to attempt to put each party in a fair position. We discern no abuse of discretion in the property award.

*Child Support Offset*

We review child support orders for abuse of discretion. *Matter of Marriage of Booth*, 114 Wn.2d 772, 776, 791 P.2d 519 (1990). A party must object to the substance of a support order to preserve the matter for appeal. *In re G.W.-F.*, 170 Wn. App. 631, 649, 285 P.3d 208 (2012). RCW 26.18.190(2) requires a mandatory child support offset

of social security disability or retirement benefits from the parent that are paid on account of the child. *In re Parentage of Fairbanks*, 142 Wn. App. 950, 956, 176 P.3d 611 (2008). Trial courts must add the social security income from the parent that is paid directly to the child to that parent's income. *Id*. This income is then considered part of the parent's child support obligation. *Id*. The court abuses its discretion if it fails to offset the parent's support payments when required by RCW 26.18.190(2). *Id*. at 956-957.

Mr. Maneau never presented evidence that any portion of his social security went to J.M. and never raised the issue at trial. The trial record does not establish what portions, if any, of J.M.'s social security came from each parent. The record lacks the sufficient evidence to establish whether a payment offset is appropriate. Mr. Maneau also has not provided any authority suggesting that an offset is appropriate due to the adoption support payments. The trial court did not err in its child support order.

*Spousal Maintenance*

The trial court has broad discretion to award spousal support and will be upheld on appeal absent abuse of discretion. *Bulicek v. Bulicek*, 59 Wn. App. 630, 633, 800 P.2d 394 (1990). Factors the trial court may consider when setting spousal support include the party's resources (including child support and income), ability to gain appropriate employment, standard of living during marriage, duration of marriage, age/physical

condition of parties, and ensuring parties can meet financial requirements. RCW 26.09.090(1)(a)-(f). After a marriage lasting over 25 years, the court's primary goal is to ensure each party is in a financially stable position for the rest of their lives. *Doneen*, 197 Wn. App. at 949. The court may use spousal support to mitigate financial disparity between the parties. *In re Marriage of Morrow*, 53 Wn. App. 579, 587-588, 770 P.2d 197 (1989).

The evidence overwhelmingly established income disparity. Ms. Maneau received very little income and had to care for J.M. Mr. Maneau received about five times more income. The court reasonably determined both parties were retired due to their advanced age, making any debate about possible further employment inapplicable. The court sought to ensure stable living conditions after a 40-year relationship. The trial court reasonably set spousal support to ensure stable living conditions for Ms. Maneau while also leaving sufficient income for Mr. Maneau.

*Attorney Fees*

Attorney fee awards are reviewed for abuse of discretion. *Matter of Marriage of Crosetto*, 82 Wn. App. 545, 563, 918 P.2d 954 (1996). The trial court may award reasonable attorney fees to a party in a domestic matter based on financial need. RCW 26.09.140. The court may also award attorney fees when a party is intransigent at trial,

9

which includes "foot-dragging, obstructing, filing unnecessary or frivolous motions, refusing to cooperate with the opposing party, noncompliance with discovery requests, and any other conduct that makes the proceeding unduly difficult or costly." *Wixom v. Wixom*, 190 Wn. App. 719, 725, 360 P.3d 960 (2015). The trial court may award attorney fees due to both intransigence and financial need. *Mattson v. Mattson*, 95 Wn. App. 592, 604-605, 976 P.2d 157 (1999).

Without reaching the issue of intransigence, we affirm the attorney fee award due to Ms. Maneau's demonstrated financial need. Mr. Maneau had greater income and received more liquid assets.[3] The court did not abuse its discretion in awarding Ms. Maneau a portion of her requested fees.

Based on the evidence in the record before us, we find the trial court did not abuse its discretion through these proceedings.

Ms. Maneau requests this court order attorney fees on appeal, contending that the appeal was frivolous and that she has financial need. RCW 26.09.140. We deny this request. The appeal was not frivolous and there was no timely request for a fee award. RAP 18.1.

---

[3] While the house was the largest asset, forcing Ms. Maneau to sell this property would defeat the court's intent in awarding the house to Ms. Maneau for raising J.M.

No. 36577-8-III
*In re Marriage of Maneau*


Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Korsmo, A.C.J.

WE CONCUR:


_____
Fearing, J.


_____
Siddoway, J.